The STATE OF NEW YORK, Plaintiff,

v.

Walter T. BLANK, Abalene Pest Control Service, Inc., and Orkin Exterminating Company, Inc., Defendants.

Walter T. BLANK and Abalene Pest Control Service, Inc., Third–Party Plaintiffs,

v.

NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, New England Marine Contractors, Inc., Capital Mutual Insurance Co., and National Union Fire Insurance Co. of Pittsburgh, Pa., Third–Party Defendants.

No. 88–CV–163.

United States District Court, N.D. New York.

Sept. 5, 1990.

As Amended Oct. 3, 1990.

Robert Abrams, Atty. Gen., State of N.Y. (Martha McCabe, Asst. Atty. Gen., of counsel), Albany, N.Y., for plaintiff The Capitol.

Ogletree Deakins Nash Smoak & Stewart (Charles A. Perry, of counsel), Atlanta, Ga., and Ogletree Deakins Nash Smoak & Stewart (Franklin H. Goldberger, of counsel), Albany, N.Y., for defendant Orkin Exterminating Co., Inc.

Whiteman Osterman & Hanna (Margaret J. Gillis, of counsel), Albany, N.Y., for defendants and third party plaintiffs Abalene Pest Control and Walter Blank.

Downs, Rachlin & Martin (William Pearson, of counsel), Burlington, Vt., DeGraff Foy Conway Holt–Harris & Mealey (David Kunz, of counsel), Albany, N.Y., for third-party defendant New England Marine Contractors, Inc.

Sheft Wright & Sweeney (David Holmes, of counsel), New York City, Smith Sovik Kendrick Schwarzer & Sugnet (William Sugnet, of counsel), Syracuse, N.Y., for third-party defendant Nat. Union Fire Ins. Co.

Hancock and Estabrook (Alan J. Pierce, of counsel), Syracuse, N.Y., for third-party defendant Capital Mut. Ins. Co.

### MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

## I. INTRODUCTION

In February of 1988, the State of New York initiated this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as well as state statutory and common law, for the remediation of pollution at a site located in the Town of Moreau, South Glens Falls, New York. The State alleged that the site was the location from which first Abalene Pest Control Service Inc. ("Abalene"), and later Orkin Exterminating Company Inc. ("Orkin"), distributed pesticides. Walter Blank, who was allegedly Abalene's former owner and president, has been joined as a defendant in this suit along with Abalene and Orkin. The dis-

pute presently before the court concerns third-party actions by Blank and Abalene against Capital Mutual Insurance Company ("Capital Mutual") and the National Union Insurance Company of Pittsburgh ("National Union") for defense and indemnification with respect to the first-party action.[1]

On February, 9, 1989, this court signed an order granting third-party plaintiff Walter Blank partial summary judgment declaring and adjudging Capital Mutual liable to provide Blank with a defense to the first-party action. That order was based upon a January 24, 1989, bench decision. The January 24, 1989 bench decision, as well as this memorandum-decision and order, are largely concerned with the effect of pollution exclusion clauses, contained in the insurance policies, on the insurers' duty to supply a defense and indemnification. The February 9th order also denied, without prejudice to renew, Blank's and Abalene's motion for partial summary judgment declaring that National Union had a duty to provide a defense. The court denied that motion on the ground that the insureds' had not provided complete evidence concerning the terms and conditions of the National Union policies—preferring that discovery be permitted into the existence of full copies of the policies before undertaking the task of reviewing secondary evidence of their existence.

The court requested that Walter Blank and Capital Mutual first attempt to resolve amongst themselves the question of the amount of attorneys' fees properly due as defense costs. This failed. A dispute arose between Blank and Capital Mutual both as to the amount of defense costs and, once again, Capital Mutual's duty to provide a defense.

On October 3, 1989, a second round of motions and cross-motions were argued before this court. Third-party plaintiff Blank moved for an order directing Capital Mutu-

al to comply with the court's February 9, 1989, order to provide Blank with a defense in the first-party action and to pay for defense costs incurred to date. Blank also moved for an order finding Capital Mutual in violation of § 349 of the New York State General Business Law entitling Blank to an award of attorneys' fees and damages. Both Blank and Abalene have also moved for summary judgment declaring and adjudging National Union liable to them for all costs, expenses and attorneys' fees incurred in defending the first-party action.

Third-party defendant Capital Mutual cross-moved pursuant to Rules 60(b)(2) and (6) of the Federal Rules of Civil Procedure for an order relieving Capital Mutual from this court's order of February 9, 1989, and for summary judgment declaring that Capital Mutual has no duty to defend or indemnify Walter Blank. Capital Mutual, in the alternative, has raised numerous objections to the amount of defense costs requested by Blank. Capital Mutual has also cross-moved for an order disqualifying the law firm of Whiteman, Osterman & Hanna from engaging in any further representation of Walter Blank in this action.

## II. LEGAL BACKGROUND AND FACTUAL CONCLUSIONS

Both Capital Mutual and National Union rely on pollution exclusion clauses contained in their policies to relieve them of the duty to defend or indemnify the insureds. In the time since this court issued its February 9, 1989, order, both the New York State Court of Appeals and the Second Circuit have issued decisions clarifying the circumstances under which the pollution exclusion clause operates to relieve an insurer of its duty to defend or indemnify. *See Technicon Electronics v. American Home,* 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (Ct.App.1989); *Powers Chemco, Inc. v. Federal Ins. Co.,* 74 N.Y.2d 910,

---

**1.** It is not disputed that Capital Mutual issued to Walter Blank a comprehensive general liability policy, No. SMP 88 74 9003, effective February 28, 1985, to January 1, 1987. This policy was issued to Jane and Walter Blank in their individual capacities as opposed to any corporate capacities they had with Abalene. Blank and

Abalene also assert that they were covered by comprehensive general liability policies issued by National Union from September 15, 1978 to March 7, 1988. Blank and Abalene will frequently be referred to as "the insureds." Capital Mutual and National Union will frequently be referred to as "the insurers."

549 N.Y.S.2d 650, 548 N.E.2d 1301 (Ct.App. 1989); *Avondale Industries, Inc. v. Travelers Indemnity Company*, 887 F.2d 1200 (2nd Cir.1989), *reh'd denied*, 894 F.2d 498 (2nd Cir.1990) (per curiam), *cert. denied*, — U.S. ——, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8 (2nd Cir.1990). A review of the current case law and findings by this court concerning the predicate facts of this case will assist in sharpening the precise legal issues and eliminating preliminary disputes.

## A. The Duty to Defend

The well settled New York law concerning the duty of an insurer to defend was recently summarized by the Second Circuit:

> An insurer's duty to defend and indemnify are separate and distinct, and the former is broader than the latter.... The duty to defend rests solely on whether the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased.... So long as the claims alleged against the insured rationally may be said to fall within the policy coverage, the insurer must come forward and defend....
>
> New York courts have held, in addition, that an insurer seeking to avoid its duty to defend bears a heavy burden. "[B]efore an insurance company is permitted to avoid policy coverage, it must ... establish[ ] that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." ... To avoid the duty therefore the insurer must demonstrate that the allegations in the underlying complaints are "solely and entirely" within specific and unambiguous exclusions from the policy's coverage.
>
> Consequently, [an insurer] can be excused from its duty to defend only if it can be determined as a matter of law that there is no possible basis in law or fact upon which the insurer might be held to indemnify [the insured].

*Avondale Industries*, 887 F.2d at 1204–05 (citations omitted). Or, as stated somewhat differently by the New York Court of Appeals:

> The duty to defend insureds—long recognized as broader than that to indemnify—is derived from the allegations of the complaint and the terms of the policy. If the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend.... Moreover, when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the "allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation."

*Technicon Electronics v. American Home*, 74 N.Y.2d at 73–74, 544 N.Y.S.2d at 533, 542 N.E.2d at 1049–50 (citation omitted) (quoting *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 875, 320 N.E.2d 619, 620–21 (Ct.App.1974)) (emphasis in original). "This duty [to defend] includes the defense of those actions in which alternative grounds are asserted, some within and others without the protection purchased." *Lionel Freedman, Inc. v. Glens Falls Ins. Co.*, 27 N.Y.2d 364, 368, 318 N.Y.S.2d 303, 305, 267 N.E.2d 93, 94 (Ct.App.1971). It is also well settled that because the duty to defend is broader than the duty to indemnify, a finding by a court that there is no duty to defend automatically means that there is no duty to indemnify. *EAD Metallurgical*, 905 F.2d at 11.

## B. The Pollution Exclusion Clause

Significantly, since this court issued its February 9, 1989, order, the highest court of New York has also found that the standard industry pollution exclusion clause is unambiguous. As stated in *Powers Chemco:* "the exception to the exclusion for liability arising from pollution is not operative unless the occurrence in question was *both* 'sudden' and 'accidental.'" 74 N.Y.2d at 911, 549 N.Y.S.2d at 651, 548 N.E.2d at 1302 (quoting *Technicon*, 74 N.Y.2d at 75, 544 N.Y.S.2d at 533, 542 N.E.2d at 1050) (emphasis in original). "Intentional dis-

charges of waste, leading to the ultimate pollution of the environment ... cannot be considered 'accidental.' " *Id.*

It is now equally clear that New York law requires courts to focus on the *type* of pollution occurrence alleged as opposed to the culpability of the insured. In *Powers Chemco* the New York Court of Appeals addressed the argument that the pollution exclusion clause only applies to actual, as opposed to innocent, polluters. The *Powers Chemco* Court relieved an insurance company of the duty to indemnify by virtue of the pollution exclusion clause even though it was the insured's *predecessor*, as opposed to the insured itself, who was alleged to have buried, dumped, and discharged pollutants into the environment. The Court stated:

> We also reject plaintiff's contention that since it was not the *actual polluter* but merely inherited the problem from the prior landowner, the pollution exclusion clause cannot bar its present insurance claim. Simply put, there is nothing in the language of the pollution exclusion clause to suggest that it is not applicable when liability is premised on the conduct of someone other than the insured.... As we noted in *Technicon*, the exclusion clause is "unambiguously plain and operative" ... and represents only a single discrete exception to the insurer's obligation to indemnify under the policy.

**2.** Third-party defendant National Union opposes the insureds' motion for summary judgment on the ground that the insureds have not yet come forward with sufficient proof concerning the existence, terms, and conditions of the insurance policies. All that National Union has submitted in this respect is an affidavit of their attorney raising certain insignificant points as to the completeness of the evidence forwarded by the insureds; no affidavit has been submitted by anyone associated with National Union who has personal knowledge with respect to the insurance policies. Moreover, National Union has failed to submit to the court a statement of material facts in dispute as is required by Local Rule 10(j). The insureds, on the other hand, have submitted along with their moving papers a complete Rule 10(j) statement which attests to the existence of the policies and details the applicable policy language. The insureds also submitted a detailed affidavit of Mark B. Weisburger, the insurance broker through which

*Powers Chemco,* 74 N.Y.2d at 911, 549 N.Y.S.2d at 651, 548 N.E.2d at 1302 (emphasis added).

### C. The Insurance Policies

Capital Mutual issued a comprehensive general liability policy, effective February 28, 1985, to January 1, 1987, to Walter Blank in his individual capacity. The Capital Mutual policy contained the standard industry pollution exclusion clause which read:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalies, toxic chemicals, liquid or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, *but this exclusion does not apply if such discharge, dispersal release or escape is sudden and accidental.*

(Emphasis added).

National Union insured Abalene under comprehensive general liability policies from September 15, 1978, to at least March 7, 1988.[2]

All of the National Union policies contained the following standard industry language concerning the duty to defend:

COVERAGE A: BODILY INJURY LIABILITY

Abalene and Blank obtained insurance coverage from National Union. *See* April 13, 1989, Affidavit of Mark B. Weisburger and Exhibits A through M. The Weisburger affidavit provides solid evidence, upon which this court relies, of the existence and terms of the policies.

Since this motion was originally argued, the insureds have submitted, and the court has considered, complete copies of the insurance policies issued by National Union to Abalene. *See* January 10, 1990, letter of Philip Gitlen and attachments. Also submitted by the insureds are interrogatory responses from National Union wherein it admits to having issued comprehensive general liability policies to Abalene from September 15, 1978, to March 7, 1989. *See* February 2, 1990, letter of Philip Gitlen and attachments. There is no serious dispute as to the insureds claim that they were covered by policies issued by the National Union for the time period covered by the underlying complaint.

COVERAGE B: PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

> (a) bodily injury or
>
> (b) property damage

to which this insurance applies caused by an occurrence and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent.

The definition of the term "occurrence" which was contained in each of the National Union policies read as follows:

> "Occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected or intended from the standpoint of the insured."

The policies issued by National Union each contained a pollution exclusion clause which read:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminates or pollutants into or upon land, the atmosphere or any watercourse or body of water: but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental, *or intentional, if for the purpose of pest control, provided such pest control operations are performed in conformity with any statute, ordinance or regulation applicable thereto.*

(Emphasis added). The pollution exclusion clause contained in National Union's policies is, due to the emphasized language at the end of the clause, narrower in scope than that of the standard industry pollution exclusion clause contained in the Capital Mutual policy. Therefore, should the court find that Capital Mutual's clause does not operate to relieve it of the duty to defend, it is clear that National Union's clause will not relieve it of the duty to provide a defense to the underlying complaint.

*D. Allegations of the Underlying Complaint*

In *EAD Metallurgical,* 905 F.2d 8 (2nd Cir.1990), the Second Circuit provided its most recent application of the pollution exclusion clause. There, the underlying complaint alleged claims pursuant to CERCLA and New York State common law. The insureds, who included EAD, Inc., as well as certain of its officers, directors and stockholders, had filed suit to obtain a defense and indemnification from two general liability insurance companies. The sole issue before the Court was whether the insurance companies were bound to defend and indemnify the insureds in light of the standard industry pollution exclusion clause contained in the policies. *Id.* 905 F.2d at 9–10. The Court reviewed the precise words of the underlying complaints, which alleged:

> EAD, throughout its operation from March 1977 through 1983, caused the release into the environment of Americium–241, a radioactive substance, by disposing or arranging for the disposal of Americium–241 at its plant facility in the Town of Tonawanda, into portions of the Town's sewer lines and ultimately into portions of the Town's sewage treatment plant and landfill.

*Id.* at 11. The complaint further alleged:

> EAD ... did wrongfully, willfully and illegally commit waste on and damage to, [the] premises ... by causing, implementing, creating, generating, injecting and inflicting radioactive contamination ...

*Id.* The Court, reading those allegations in the light most favorable to the insureds, held that there was "no question" that the insureds were alleged to have " 'continuously and intentionally polluted.' " *Id.* (quoting *Avondale Industries, Inc. v. Travelers,* 887 F.2d at 1205). The Court then affirmed the district court's grant of summary judgment to the insurance com-

panies on the basis that the pollution occurrence was neither sudden nor accidental. *Id.*

The *EAD* Court juxtaposed the language in the underlying complaints in the *EAD* action against the language contained in the underlying complaint in *Avondale*—where the Second Circuit held that the insurance companies had a duty to defend. The *EAD* Court stated:

> The allegations in the underlying complaint in *Avondale* charged the defendants with " 'insufficient' containment measures; ... 'generating' hazardous waste; ... 'knowledge' of the presence of toxins; ... [and] culpability for 'escape' of hazardous materials." *Avondale*, 887 F.2d at 1205.

*EAD*, 905 F.2d at 11. The language of the complaint in *Avondale*, according to the *EAD* court, held open the possibility that the pollution was "sudden and accidental," and therefore not subject to the pollution exclusion. *Id.*

The State of New York filed the complaint in this action on February 16, 1988. The complaint asserts claims under CERCLA, New York's common law of public nuisance, and the New York State Environmental Conservation Law ("ECL"). All counts of the State's complaint seek to hold Blank and Abalene strictly liable. The State seeks a judgment requiring the defendants to: (1) assess, abate, and remediate the pollution which is allegedly emanating from the site; (2) reimburse the State for the costs it incurred when responding to the pollution emergency at the site; (3) compensate for damages to the natural resources of the State pursuant to CERCLA; (4) abate the nuisance under the common law of public nuisance; and (5) pay penalties for violation of the New York ECL.

After identifying the parties and establishing a connection between each of them and the particular causes of action, the complaint describes the site in question. The site is located at the intersection of Route 9 and Reservoir Road in the Town of Moreau and has been used by defendants Abalene and Blank for the storage and mixing of pesticides. The State's complaint alleges that defendants Blank and Abalene were owners and/or operators of the site between 1972 and December 31, 1986. Paragraph 10 of the State's complaint then alleges:

> Defendants have and continue to store and mix pesticides at the site which are used for structural pest control and lawn and yard pest application. The mixing of pesticides, loading pesticides into tank trucks, the spraying and cleaning of trucks and disposal of pesticide product, waste, residues and containers have occurred on the site. Pesticides, including hazardous substances, have been released and have leaked into the soil and ground water under the site. Disposal of hazardous wastes as defined in ECL § 27–0901(2)[3] has occurred at this site.

Paragraph 21 states:

> Abalene Pest Control Service, Inc., ... has owned and operated the facility from on or about 1972 until December 31, 1986 and operated the facility at the time of the release of one or more hazardous substances thereon. Materials containing hazardous substances was accepted by Abalene, transported to or generated at the site, and was disposed of and released at the facility while Abalene owned and operated the facility.

Paragraph 23 states:

> Defendant Walter T. Blank, a person as defined by CERCLA, 42 U.S.C. § 9601(21), exercised control over and was the operator of the site from 1972 until on or about December 31, 1986.

After a thorough reading of the underlying complaint, this court determines that the complaint does not fully describe the facts which gave rise to the site becoming polluted with hazardous substances. It does not tell the court how the site became

---

**3.** ECL § 27–0901(2) reads:
"Disposal" means the abandonment, discharge, deposit, injection, dumping, spilling, leaking, or placing of any substance so that substance or any related constituent thereof may enter the environment. Disposal also means the thermal destruction of waste or hazardous waste and the burning of such wastes as fuel for the purpose of recovering usable energy.

polluted, how many acts of pollution occurred, who actually did the polluting, or within what time-frame the pollution occurred. Neither does the underlying complaint inform the court of the circumstances of any particular act of pollution. Because the claims of the underlying complaint sound in strict liability, it appears that the State felt it unnecessary to specify *any* of the factual circumstances concerning how the Moreau site became polluted with hazardous substances. The complaint is at least as vague as that which was reviewed by the Second Circuit in *Avondale*, 887 F.2d at 1205— where the insurer was required to supply a defense.

Given the vague allegations of the complaint and the admonishment that the "allegations of the complaint [must] cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation," *Technicon Electronics*, 74 N.Y.2d at 73–74; 544 N.Y.S.2d at 533, 542 N.E.2d at 1050, the court finds that both Capital Mutual and National Union would, under the general rule, be required to provide a defense to their respective insureds. While some of the allegations in the complaint may well fall outside the scope of coverage, other portions of the complaint may reasonably be read as alleging sudden and accidental pollution—thereby necessitating the provision of a defense.

■ Finally, the court observes that the underlying complaint may well be read as alleging claims against Walter Blank in both his individual and corporate capacities due to the vagueness of the complaint. While paragraphs 6, 23, and 25 of the underlying complaint *may* be read as making allegations against Blank solely in his role as a corporate officer, they *may* also be read as alleging claims against Blank in his individual capacity. Blank is *potentially* liable in either capacity and under both the CERCLA and the state law claims. *See e.g., State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052–53 (2nd Cir. 1985).

## III. THE PRESENT MOTIONS

### A. *Capital Mutual's Motion for Reconsideration*

■ (1) *Outside Evidence.* Capital Mutual has moved for reconsideration of this court's prior order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. National Union essentially joins in this motion by way of employing the same arguments raised by Capital Mutual; however, National Union seeks only to avoid summary judgment.

The insurers do not revisit most of the arguments addressed in the court's January 24, 1989, bench decision and February 9, 1989 order. Instead, they raise new arguments which they believe will relieve them from having to provide a defense to the claims asserted in the underlying complaint. Under this new analysis the insurers first seek to prove, as a matter of law, that they have no duty to *indemnify* Blank and Abalene. Capital Mutual and National Union assert that recently developed evidence, as well as decisions issued by other courts in related actions, conclusively prove that the pollution occurrences which allegedly took place at the Moreau site were due to "knowing" or intentional conduct. As such, the insurers contend that they are relieved from any duty to indemnify because the pollution occurrence could not be termed "sudden and accidental." The insurers then claim that they are relieved from having to provide a *defense* in the present action arguing that because there is no duty to indemnify, there can be no duty to defend. In the alternative, the insurers maintain that a decision issued by a New York State court, which declared that Capital Mutual had no duty to defend or indemnify Blank, bars this court from holding otherwise.

As already discussed, the general rule in cases concerning the duty of an insurer to defend is that the duty to defend is derived from the allegations of the underlying *complaint* and the terms of the policy. In the present case insurers seek to get information before the court, beyond the allegations contained in the underlying complaint, which they believe would operate to defeat

all coverage including the duty to provide a defense. The insurers rely heavily on *Lionel Freedman, Inc. v. Glens Falls Ins. Co.*, 27 N.Y.2d 364, 318 N.Y.S.2d 303, 267 N.E.2d 93 (Ct.App.1971). The insurers assert that the holding of that case stands for the proposition that a court which determines, through a review of the facts *outside* of the first-party complaint, that there is no duty to indemnify also must relieve the insurer from its obligation to provide a defense. This was so, according to the insurers, even though the complaint alleged claims which fell within the terms of the policy.

In *Lionel Freedman* the insured sought a defense on a negligence action which was commenced by a plaintiff after an accident in which a man fell into an elevator shaft at the street level of a building, which the insured occupied as a tenant of the 4th and 5th floors. The complaint was broadly drawn so as to contain allegations against the insured of negligence in the maintenance of the first floor hallway. *Id.* 27 N.Y.2d at 366–367, 318 N.Y.S.2d at 304, 267 N.E.2d at 94. After reciting the general rule in New York concerning the duty to defend, the court first found that any allegations in the complaint with respect to injury occurring in an elevator or elevator shaft were clearly excluded by the terms of the insurance policy.

The court then went on to examine whether the insurer could be relieved of its duty to defend even though the complaint alleged that the insured had been negligent in fulfilling its responsibilities to maintain the first floor hallway—thereby allegedly causing injury to the plaintiff in the first-party action. The Court of Appeals had before it a copy of the insured's lease, which the court found "would demonstrate that [the insured] did not rent the first floor hallway and was not responsible for its maintenance." *Id.* at 368–69, 318 N.Y. S.2d at 306, 267 N.E.2d at 95. On this basis the court found that the lease agreement would, on a summary judgment motion, defeat the first-party plaintiff's "hallway" negligence claim. A four judge majority of the court, with three judges dissenting, held that the insurer had no duty

to defend. The court stated: "We will not permit one patently 'groundless' and 'shotgun' allegation to create a duty to defend far beyond that which [the insurer] could have anticipated when it issued the policy." *Id.* at 369, 318 N.Y.S.2d at 306, 267 N.E.2d at 95. Therefore, it is clear that the Court of Appeals, when analyzing at least one duty to defend case, looked beyond the allegations contained in the pleadings.

Capital Mutual also relies on language use and analysis employed by the New York State Supreme Court, Appellate Division, Second Department, in *Technicon Electronics v. American Home Assur. Co.*, 141 A.D.2d 124, 533 N.Y.S.2d 91, *aff'd* 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (Ct.App.1989). There, the Appellate Division determined that the underlying complaint alleged a "long-standing, continuous and intentional discharge of toxins," and therefore held that the pollution exclusion clause operated to relieve the insurer of the duty to defend. *Id.* 141 A.D.2d 124, 533 N.Y.S.2d at 104. The Appellate Division also specifically held that it could "consider the judicial admission contained in [the insured's] *answer* in the underlying personal injury action, in which [the insured] concedes that the discharges of toxic material at issue were intentional." *Id.* (emphasis added). Thus, the court looked outside of the complaint to the extent that it reviewed the entire pleadings. The *Technicon* court also stated that "[s]ince there is no conceivable duty to indemnify, there is no duty to defend." *Id.* The insurers rely on this statement as further support for their general theory that a court may look outside of the allegations of the complaint.

The insurers' novel analysis of the law simply does not comport with the vast majority of the New York Court of Appeals case law concerning the duty to defend and, in this court's opinion, would not be accepted by the Court of Appeals today. Therefore, this court will not review the substantial amount of evidence which has been put forward by Capital Mutual to support its position that there is no duty to defend.

Soon after the Court of Appeals issued its decision in *Lionel Freedman*, that case was distinguished and severely narrowed by the subsequent, broadly cited, case of *International Paper Co. v. Continental Cas. Co.*, 35 N.Y.2d 322, 326–27, 361 N.Y. S.2d 873, 876, 320 N.E.2d 619, 621 (Ct.App. 1974). In *International Paper*, the plaintiff brought suit against her employer who in turn brought suit against its insurance carrier demanding a defense and indemnification in the first-party action. The insurer disclaimed all coverage and refused to supply a defense. The insured retained its own counsel and was subsequently successful in defending the first-party action on all counts. The *International Paper* court held that the insurer had a duty to pay for the defense costs which were incurred by the employer in defending the underlying action regardless of whether there was any duty to indemnify. It was reasoned that "[a]n insured's right to be accorded legal representation is a contractual right and consideration upon which his premium is in part predicated, and this right exists even if debatable theories are alleged in the pleading against the insured." *Id.* at 325, 361 N.Y.S.2d at 875, 320 N.E.2d at 621. This right of the insured to a defense, even against frivolous claims so long as the claims fell within the terms of the policy, was termed "litigation insurance" by the court. *Id.* at 326, 361 N.Y.S.2d at 876, 320 N.E.2d at 621. The insurer's reliance on *Lionel Freedman*, was dismissed out of hand by the *International Paper* court as being a case where the "*complaint* stated no basis for recovery whatsoever." *Id.* (emphasis added).

In *International Paper*, the Court of Appeals effectively closed whatever opening the *Lionel Freedman* decision created. The Court of Appeals has followed the holding of *International Paper*, that "if the insurer is to be relieved of a duty to defend it is obligated to demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and further, that the allegations, *in toto*, are subject to no other interpretation," ever since. *Id.* at 325, 361 N.Y. S.2d at 875, 320 N.E.2d at 621; *see e.g.*,

*Technicon Electronics*, 74 N.Y.2d at 74–75, 544 N.Y.S.2d at 533, 542 N.E.2d at 1050 (quoting *International Paper*); *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 310–12, 486 N.Y.S.2d 873, 875–77, 476 N.E.2d 272, 274–76 (Ct.App.1984) (same).

The troublesome language and analysis contained in the Appellate Division's decision in *Technicon Electronics* relied upon by the insurers may also be distinguished. The court held that it may take into account admissions, outside of the complaint, which were made by the insured in its *answer*. In the present case the insureds made no such admissions. Through this narrow exception the insurer is attempting to bring a broad array of evidentiary materials before the court that are well beyond the pleadings or any other normal judicial admission. This court does not read the exception to be so broad. To the extent that Appellate Division made the uncited statement that "[s]ince there is no conceivable duty to indemnify, there is no duty to defend," *id.* 141 A.D.2d 124, 533 N.Y.S.2d at 104, this court finds it to be dicta which does not alter this court's analysis.

Finally, the position taken by Capital Mutual and National Union does not comport with the well settled concept that "the duty to defend and the duty to indemnify are separate and distinct questions of law." *Avondale Industries*, 887 F.2d 1203; *see also Servidone Constr. Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441, 444 (Ct.App.1985) ("The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person."). To hold otherwise would be to inform insurance companies that their best course of action is to withhold payment for any defense costs, even in the face of a court order, wait to see if they have any obligation to indemnify, and then claim that if there is no duty to indemnify, there could never have been any duty to defend. Such, in the opinion of this court, would be patently unfair.

■ (2) *Collateral Estoppel.* Capital Mutual, also on reconsideration, asserts

that this court is collaterally estopped from holding it responsible to provide a defense to Blank. The collateral estoppel claim is based on a decision issued by Justice Loren Brown of the Supreme Court of the State of New York, Saratoga County, which held that Capital Mutual had no duty to defend Walter Blank against claims asserted in the first-party proceeding. *Town of Moreau et al. v. Orkin Exterminating Co. et al.*, at 4, (RJI No. 45–1–88–0665) (June 16, 1989). That litigation concerns related factual circumstances to those presently before this court.

Title 28 U.S.C. § 1738 "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). Thus, New York law must be applied to determine the preclusive effect of the state court decision. Under New York law an individual is collaterally estopped from relitigating an issue if: (1) the issue as to which preclusion is sought is identical to the issue decided in the prior proceeding, (2) the issue was necessarily decided in the prior proceeding, and (3) the litigant who will be held precluded had a full and fair opportunity to litigate the issue in the prior proceeding. *Capital Telephone v. Pattersonville Telephone*, 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 13, 436 N.E.2d 461, 463 (Ct.App.1982); *see also Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 500–01, 478 N.Y.S.2d 823, 826–27, 467 N.E.2d 487, 490–91 (Ct.App.1984).

The doctrine of collateral estoppel does not operate to relieve Capital Mutual of its duty to defend Blank for two readily apparent reasons: (1) the January 24, 1989, bench decision of this court, holding that Capital Mutual was required to defend Blank, was issued *prior* to the June 16, 1989, decision in the state court, and (2) there is *no identity of issues* because the same underlying complaint is not presented in both the state and federal actions. Thus, Capital Mutual's motion for reconsideration of the February 9, 1989, order of this court is denied. Capital Mutual is obli-

gated to supply a defense to Walter Blank in the underlying action commenced against him by the State of New York. Moreover, both Blank and Abalene are granted summary judgment, pursuant to Rule 56 Fed.R.Civ.P., declaring and adjudging that National Union has a duty to supply them a defense in the underlying first-party action.

### B. The Attorney Fee Dispute

■ Capital Mutual, in the alternative, has raised a veritable plethora of issues concerning the propriety of certain defense costs for which Blank has sought reimbursement. Rather than decide all these issues definitively, this court will set out specific guidelines and direct the parties to conference with each other in the hopes of reaching an out of court settlement. Any remaining issues may then be conferenced with the court.

(1) *Pre-suit Expenditures.* Capital Mutual asserts that any defense costs which were incurred by Blank prior to the date upon which the State of New York filed the first-party complaint, that is, February 16, 1988, must be disallowed. It is Capital Mutual's position that until the complaint was filed there was no "suit" within the meaning of the Capital Mutual policy and therefore no duty to provide a defense. Blank asserts, on the other hand, that the initiation by the State of New York of pre-complaint administrative enforcement efforts constitutes a "suit." This appears to be an unsettled question of New York law. Contrast the discussion in *Avondale Industries*, 887 F.2d at 1206 (Louisiana Department of Environmental Quality initiation of administrative enforcement proceedings sufficiently adversarial and threatening to constitute a "suit" to which the insurer must provide a defense), with that contained in the New York State, Appellate Division, Second Department's decision in *Technicon Electronics*, 141 A.D.2d 124, 533 N.Y.S.2d at 104–05 ("[T]he 'potentially responsible person' letter sent by the EPA to [the insured] ... does not constitute the institution of a 'suit' to recover ...

damages as that term is used in the subject policies so as to require a defense.").

The court holds that, regardless of the date upon which the complaint was actually filed, Capital Mutual has an obligation to reimburse Blank for all defense costs which he incurred for services rendered which are useful in defending against the first-party complaint. Costs are to be assessed whether or not they were incurred due to services rendered as part of any defense raised by Blank to the State's pre-complaint enforcement efforts. Common sense argues that Capital Mutual is *bene-fitted* by the early actions taken by Blank to defend this action and, thereby, ultimately reduce any potential assessment of damages.

■ (2) *Swanson Environmental's Bills.* Blank seeks to recover some $159,-372.25 in costs for services rendered by Swanson Environmental, Inc., as consultants to the insureds in this action. It is clear that the insureds have the right to hire an expert to assist them in a defense of this action. The need for expert services is also necessary due to the insureds counterclaim against the State of New York, pursuant to CERCLA, for damages due the allegedly reckless emergency clean up of the site. However, a sizable portion of the work done by Swanson Environmental appears to be aimed at the remediation of the site, as opposed to developing an expert defense. This court finds that the planning and execution of the site clean up are in more in the nature of indemnification costs and, therefore, are not recoverable, if at all, until after a determination on the merits. On the other hand, a reasonable amount of testing, investigation, and analysis is necessary to any expert defense, and may be recovered at this time.

■ (3) *Other Actions.* The factual circumstances of this case have led to numerous other court proceedings against Blank and Abalene. The firm of Whiteman, Osterman & Hanna has served as counsel to Blank and Abalene in a number of these proceedings. The court holds that Capital Mutual has a duty to reimburse Blank solely for the defense costs incurred in this *action.* Any defense costs which cannot be separated out because the services rendered apply to more than one proceeding will be divided and assessed evenly between the individual actions.

■ (4) *Services of Gillert & Cutler.* This court finds that the legal services which were rendered by the law firm of Gillert & Cutler as part of Blank's defense to *this* proceeding are proper. A counsel need not be a counsel of record to assist in the defense of the action and receive payment thereon.

■ (5) *Non–Professional Administrative Services.* Walter Blank has sought reimbursement for non-professional services which were performed by paralegals and librarians of the Whiteman, Osterman & Hanna law firm. Capital Mutual asserts that these costs should be subsumed into the already high hourly rate charged by attorneys. The court holds that Blank is entitled to recover the costs of services rendered by paralegals and librarians which would otherwise have been rendered by an attorney. The law firm is entitled to be reimbursed at the regular market rate for such services. *See Missouri v. Jenkins,* —— U.S. ——, 109 S.Ct. 2463, 2471, 105 L.Ed.2d 229 (1989).

(6) *Hourly Rate Charged By Blank's Counsel.* The court finds that the hourly rate charged by counsel for Blank not to be unreasonable given the background of counsel and the skills necessary to effectively defend the first-party action.

(7) *Description of Services.* Capital Mutual has raised concerns with respect to Whiteman, Osterman & Hanna's description of services in its request for reimbursement of defense costs. The objections are too many to be reviewed in a written decision. The court directs counsel to conference on these matters and attempt to resolve these issues without court intervention. If necessary the court will conference with counsel to resolve remaining disputes. Capital Mutual is reminded that hypersensitive objections and demands for excessive detail will be frowned upon by this court.

(8) *Apportionment of Defense Costs Between Blank and Abalene and Their Insurers.* Capital Mutual asserts that the defense costs should be apportioned between it and any other insurers to this action who represent Blank and Abalene. In New York, "where there are multiple policies covering the same risk, and each generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance." *Jefferson Ins. Co. v. Glens Falls Ins. Co.*, 88 A.D.2d 925, 926, 450 N.Y.S.2d 888, 890 (A.D. 2nd Dept. 1982) (and cases cited therein). Counsel for Capital Mutual and National Union are directed to meet and attempt to resolve the proportion of defense coverage which they will be assessed.

C. *Motion to Disqualify Whiteman, Osterman & Hanna as Counsel*

Capital Mutual has moved to have the law firm of Whiteman, Osterman & Hanna disqualified as counsel to this action on the basis that there are some potential cross-claims which Blank may have against Abalene. On this basis, Capital Mutual asserts that there is a conflict of interest between the insureds which requires separate counsel. This court will not, at this time, direct the Whiteman law firm to withdraw. Rather, counsel is directed to raise and explain any potential conflict of interest issues with its clients to determine if Blank and Abalene want counsel to continue in its representation on this matter. Counsel is, of course, directed to exercise its own independent judgment as to whether a conflict exists, and act accordingly.

D. *Blank's Request for Attorney's Fees Pursuant to Section 349 of the New York General Business Law*

██ Blank has requested that liability be assessed against Capital Mutual on the basis that it violated § 349 of the New York General Business Law. The court denies Blank's motion. This issue was not briefed in the original motion papers or in the original memorandum of law filed by Blank. The only place that this motion was originally referenced by Blank was in his notice of motion. Blank did brief this issue in his *responding* papers to those filed by the insurers. Thus, Capital Mutual was not given an opportunity to reply to this motion through the failure of Blank to raise this issue in his original moving papers. On this basis the motion is denied.

CONCLUSION

Third-party defendant Capital Mutual's motion for reconsideration is denied. This court re-affirms its prior holding that Capital Mutual has a duty to provide a defense for third-party plaintiff Walter Blank in the underlying action. All undisputed defense costs are to be paid immediately. The motion by third-party plaintiffs Blank and Abalene for summary judgment declaring and adjudging that third-party defendant National Union has a duty to defend Blank and Abalene against the claims alleged in the first-party action is granted. The motion by Capital Mutual to disqualify counsel for Walter Blank is denied in accordance with the above decision. The motion by Walter Blank for damages pursuant to § 349 of the New York General Business Law is denied.

Counsel for Capital Mutual and National Union are directed to confer and make serious good faith efforts to resolve any issues concerning the proportion of the reasonable defense costs each will be allotted within twenty days (20) of the issuance of this memorandum-decision and order. Counsel for Capital Mutual, National Union, Walter Blank, and Abalene are directed to meet and confer at the counsel for the insureds place of business, or in the alternative at any other location agreeable to all parties, within thirty (30) days and make serious good faith efforts to resolve any disputes as to the defense costs in accordance with the above decision.

IT IS SO ORDERED.