BOYCE THOMPSON INSTITUTE FOR PLANT RESEARCH, INC., Plaintiff,

v.

INSURANCE COMPANY OF NORTH AMERICA, Defendant.

No. 90 Civ. 0379 (GLG).

United States District Court, S.D. New York.

Dec. 3, 1990.

Whiteman Osterman & Hanna (Neil L. Levine, of counsel), Albany, N.Y., for plaintiff.

Mudge Rose Guthrie Alexander & Ferdon (Paul R. Koepff, of counsel), New York City, for defendant.

## OPINION

GOETTEL, District Judge:

Chlordane is a member of a class of chlorinated hydrocarbon insecticides known generally as "cyclodienes" which were introduced into the marketplace for general use sometime in the late 1940s. Popular as a termiticide, the chemical would be injected, in a diluted form, into the subterrain surrounding residential and commercial structures, where after it dried, it would remain in the soil for years after. Chlordane is not biodegradable. Sometime between 1976 and 1986, chlordane was determined to be carcinogenic. Accordingly, it was listed as a hazardous substance by the United States Environmental Protection Agency in 1985 and by the New York State Department of Environmental Conserva-

tion ("NYSDEC") in 1986. Chlordane's use was restricted in 1988.

This case concerns a commercial site in Yonkers where sometime prior to 1987 chlordane contamination occurred. A clean-up of the site has been undertaken by the current owner pursuant to a consent degree entered into with NYSDEC. As is only too common, a tangle of litigation has emerged to determine responsibility for the contamination and to allocate the costs of the clean-up. However, regardless of the outcome, more often than not, the insurance industry is the ultimate bearer of the costs as a result of general comprehensive liability policies underwritten before it was known that easy solutions achieved with chemicals are time-bombs threatening public health. But rather than ponder such follies, we will turn our attention to the immediate problem.

## I. BACKGROUND

Boyce Thompson Institute for Plant Research, Inc., a not-for-profit corporation, affiliated with Cornell University, engages in experimental plant and environmental research supported by New York State, federal agencies and private industry. During the period encompassing roughly 1924 to 1969, Boyce Thompson owned a 24 acre site in Yonkers, New York[1] which was used as a research and test farm. The site contained various fruit orchards, plantings of vegetables and a small number of elms which were used to evaluate numerous agricultural products including fungicides, insecticides and herbicides. Greenhouses were also on the site. Refuse from the operations was deposited in a landfill, located on the northern portion of the property.

In October 1969, Boyce Thompson sold the site to Gestetner Corporation which, in turn, sold the site to Wilmorite, Inc. in May 1986. When Wilmorite, a Rochester-based developer, sought to construct a mall on the site, it encountered community opposition. Wilmorite abandoned these plans and

---

1. This site, which was known as Napera Park Farm, is located at Truman Avenue and Executive Boulevard in Yonkers, New York.

unsuccessfully tried to sell the property. Sometime during 1987, the developer learned that hazardous substances might be present on the site. Subsequent tests confirmed this suspicion. Chlordane was found in concentrations greater than one part per million in two sections of the site: the "ballfield" and the former "greenhouse."

After it contacted NYSDEC, Wilmorite entered into a consent decree in which it agreed to undertake a clean-up of the site. As of this date, the clean-up has consisted primarily of soil removal at a cost of over $1,000,000. Further testing is ongoing.

Boyce Thompson was notified by Wilmorite on April 12, 1988 of the hazardous substances on the site and requested to make contribution to the response costs. Boyce Thompson declined. In February 1989, Wilmorite filed suit against Boyce Thompson demanding that Boyce Thompson contribute to the clean-up as required by the Comprehensive Environmental Response, Compensation & Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. *See Wilmorite, Inc. v. Boyce Thompson Institute for Plant Research, Inc.,* 89 Civ. 1129 (GLG). The complaint alleges that Boyce Thompson used part of the site as a landfill into which large amounts of toxic substances, including chlordane, were deposited. Boyce Thompson filed a third party complaint against Gestetner Corporation which alleges that the contamination occurred during the latter's stewardship of the site.

This case arose when Boyce Thompson filed, on May 9, 1988, a Notice of Claim with Insurance Company of North America ("INA") through Harvey Dann & Co., which had served as its insurance broker since at least 1948. The Notice referred to policies OBP 4585, OBP 46480, OBP 66183 and OBP 106621 which were Office and Building policies purchased to provide property and comprehensive general liability ("CGL") insurance for Boyce Thompson. Boyce Thompson demanded coverage from INA for the claims asserted against it by Wilmorite; INA disclaimed coverage. In January 1990, Boyce Thompson filed a suit against INA. In its complaint, Boyce Thompson alleged that INA was obligated under the terms of the policies purchased during the years 1948 to 1975, to defend and indemnify Boyce Thompson against the claims made by Wilmorite.

Presented here are cross-motions by Boyce Thompson and INA for summary judgment. Boyce Thompson seeks a declaration that INA is contractually obligated to defend it in the Wilmorite suit and that INA has breached its duty to defend. INA opposes this motion on several grounds and wants a declaration that under the terms of three separate insurance policies sold by INA to Boyce Thompson covering the years 1966 to 1975, it has no duty to defend nor indemnify Boyce Thompson. It is obvious that the cross-motions concerning the duty to defend are mutually exclusive because if Boyce Thompson's motion is granted, then necessarily INA's motion must be denied, at least in part. Therefore, Boyce Thompson's motion will be considered first.

## II. BOYCE THOMPSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Summary Judgment

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party carries the burden of demonstrating the absence of a material, factual dispute. Fed.R.Civ.P. 56(c). But if the non-moving party sets forth specific facts showing a genuine need for trial and these facts carry more weight than just some metaphysical doubts, then summary judgment is appropriately denied. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Where ambiguities exist, the court must necessarily resolve these and draw all inferences in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). With this jurisprudential background in mind, we turn to the issues before us.

### B. The Duty to Defend

 The duty to defend is broader than the duty to indemnify. *Avondale Industries, Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1204 (2d Cir.1989), *petition for reh'g denied*, 894 F.2d 498, *cert. denied*, — U.S. ——, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *Burroughs Wellcome Co. v. Commercial Union Ins. Co.*, 632 F.Supp. 1213, 1218 (S.D.N.Y.1986); *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 494 N.Y.S.2d 688, 484 N.E.2d 1040 (1985). Nevertheless, an insurer's duty to defend is not automatically triggered by the filing of a suit against the insured. Whether or not an insurer is obligated to undertake the defense of the insured is determined by engaging in a straightforward analysis. First, the insured must make a threshold showing that insurance policies exist that indeed provide such coverage. Next, the complaint against the insured must be examined to determine whether it contains allegations that arguably or potentially bring the action within the scope of the coverage purchased. *EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8 (2d Cir.1990); *Avondale Industries*, 887 F.2d at 1204. Finally, to escape liability, the insurer must then establish that exemptions or exclusions contained in the policy apply to that particular case and that they are subject to no other reasonable interpretation. *Seaboard Surety Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272 (1984).

**2.** The cover sheet of INA OBP 46480 contains a notation stating "renew or in lieu of OBP 4585". This, Boyce Thompson argues, indicates that OBP 46480 is a continuation of a policy covering the previous three years. However, mere mention of a policy number in another document is insufficient to prove the existence or terms of insurance coverage.

**3.** These ledger sheets show that periodic payments were made to Harvey Dann in the years 1941 to 1951, 1963 and 1964. The payments, made to cover three year intervals, echo the three year period of the known policies. No notations indicate that these payments were conveyed by Harvey Dann to INA or that the money was intended to purchase liability insurance. In addition, one notation indicates a receivable from INA for $1106.19 for an explosion. This suggests first party property insurance but does not allow us to draw an inference

### a. *The Insurance Policies*

The foundation of this dispute rests upon insurance policies purportedly sold by INA to Boyce Thompson over a period spanning roughly 1948 to 1975. Boyce Thompson alleges that these policies provide comprehensive liability insurance for the 24 acre Truman Avenue site and as a result, INA is obligated to undertake its defense in the Wilmorite action.

Boyce Thompson has provided this court with copies of only three policies covering the years 1966 to 1975: these are marked OBP 46480, covering 1966 to 1969, OBP 66186, covering 1969 to 1972, and OBP 106621, covering 1972 to 1975. Copies of the policies for the earlier years are apparently not available from either Boyce Thompson or INA.

 Because lost insurance instruments are a common problem, a party seeking to recover upon a lost instrument must prove its former existence, execution, delivery and contents by clear, satisfactory and convincing evidence. *See Emons Industries, Inc. v. Liberty Mutual Fire Insurance Co.*, 545 F.Supp. 185, 188 (S.D.N.Y. 1982); *Sadow v. Poskin Realty Corp.*, 63 Misc.2d 499, 504, 312 N.Y.S.2d 901, 907 (Sup.Ct.1970). As evidence of these earlier policies,[2] Boyce Thompson has offered ledger sheets indicating payments to Harvey Dann[3] and an affidavit[4] from an em-

of comprehensive general liability insurance coverage.

Taken alone, the ledger sheets only reveal that payments were made to Harvey Dann and that some payments were received by Boyce Thompson from INA.

**4.** This affidavit asserts that the policies given to the court are the same as policies always sold by INA and suggests, therefore, that the court should find the terms of the lost policies to be the same as the terms of the existing policies. Affidavit Robert Gillie ¶ 3 (Sept. 28, 1990). Standing alone, the affidavit is insufficient evidence of insurance coverage for the disputed period. *See Olin Corp. v. American Guarantee & Liability Ins. Co.*, Index No. 25585/87 (N.Y. Co.Sup.Ct.1988), *aff'd*, 154 A.D.2d 322, 547 N.Y. S.2d 221 (1st Dept.1989), *appeal denied*, 75 N.Y.2d 706, 552 N.Y.S.2d 929, 552 N.E.2d 177 (1990) (sworn testimony of insurance broker

ployee of Harvey Dann & Co., its insurance broker, which states that from 1948 to 1975, Boyce Thompson employed that company as its agent and broker for comprehensive general liability coverage by INA. We find that, even considered in conjunction, the ledger sheets and the affidavit do not rise to the level of clear and convincing evidence required to prove the existence or the contents of liability insurance.

However, INA has not disputed that it provided comprehensive general liability insurance to Boyce Thompson under the three policies submitted to this court. Any of these policies would provide the basis for Boyce Thompson's demand that INA defend it, provided that the Wilmorite complaint fell within the scope of the insurance coverage and the liability was not precluded by any exclusion in the policy. Next, the applicability of the exclusions contained in these three policies will be considered.

b. The policy exclusions

■ INA has argued that the "owned property" exclusions contained in OBP 46480, OBP 66186, and OBP 106621 would preclude its duty to defend.[5] An "owned property" exclusion excuses the insurer from any duty to defend or indemnify claims which are limited to and based solely on damage to the insured property itself. INA maintains that first, the Wilmorite complaint does not allege damage to third parties and second, that in reality, the contamination occurred only on the Truman Avenue site. Thus, the very terms of the CGL policy which clearly excludes coverage relating to damage on real property owned by the insured, dictate that INA's duty to defend has not been triggered.

■ However, when looking to see whether indeed the duty to defend has been triggered, we need not undertake a factual inquiry so long as the complaint does not exclude the possibility that the contamination occurred during the policy period. *American Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp. 1485, 1500 (S.D.N.Y.1983), *aff'd in part and modified in part*, 748 F.2d 760 (2d Cir. 1984). Thus, so long as the Wilmorite complaint contains allegations that encompass the possibility that off-site contamination exists or that the clean-up was performed to prevent damage to the property of third parties, the owned property exclusion would not be applicable to work done on the property. *See Bankers Trust Co. v. Hartford Accident & Indemnity Co.*, 518 F.Supp. 371, *vacated*, 621 F.Supp. 685 (S.D. N.Y.1981); *Broadwell Realty Services, Inc. v. Fidelity & Casualty Co.*, 218 N.J. Super. 516, 528 A.2d 76, 82 (App.Div.1987) ("[A]batement remedies designed to prevent imminent and immediate damage to third parties cannot be denied on the basis of the owned property exclusion.") Therefore, the fact that the clean-up has occurred only on the Truman Avenue site is of little consequence.

Boyce Thompson contends that the owned property exclusion is inapplicable in this case, pointing to the Wilmorite complaint, itself, which alleges that Boyce Thompson "dumped and disposed of large and unlawful amounts of pesticides, chemicals, including chlordane [and] toxic wastes." ¶ 6. The complaint refers to environmental contamination caused by the chlordane, ¶ 41, the environmental hazard posed by the chlordane, ¶¶ 47, 54, and the hazard to the public and the environment posed by the chlordane, ¶ 55. Relying on CERCLA definitions of the terms used in the Wilmorite complaint, Boyce Thompson argues that the complaint, in effect, alleges damage to groundwater and damage to property owned by third parties.[6]

that he had procured the disputed policy insufficient to defeat summary judgment).

5. At oral argument, Boyce–Thompson represented that it was no longer relying on OBP 106621. Therefore, we need not address the pollution exclusion contained within this policy which INA has argued would obviate any duty to defend or indemnify.

6. Moreover, we note that the site clean-up was undertaken pursuant to a consent decree with NYSDEC. The interest of the public authorities in the decontamination of the property suggests that public welfare was implicated by the chlordane on the site. Indeed, the consent decree states that "[i]t is in the public's interest to initially remove soil from these areas." We also note the site continues to be tested and the

No Second Circuit court nor New York court has addressed this issue and, in general, case law on the applicability of the owned property exclusion to contamination such as occurred on the Truman Avenue site, is unsettled.[7] We will defer our opinion on this thorny issue because the summary judgment issue before us can be resolved by comparing the allegations in the underlying complaint with the scope of purchased coverage.

c. The complaint

■■ The duty to defend rests solely on whether the complaint in the underlying action contains any allegations that arguably or potentially bring the action within the protection purchased. *Avondale Industries*, 887 F.2d at 1204; *Technicon Electronics Corp. v. American Home Ass. Co.*, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989). So long as the claims alleged against the insured rationally may be said to fall within the policy coverage, the insurer must come forward and defend. *Avondale Industries*, 887 F.2d at 1204; *Seaboard Surety Co.*, 64 N.Y.2d at 310–11, 476 N.E.2d at 275, 486 N.Y.S.2d at 876 (1984). *See Lowenstein Dyes & Cosmetics, Inc. v. Aetna Life & Cas. Co.*, 524 F.Supp. 574, 576 (E.D.N.Y.1981), *aff'd*, 742 F.2d 1437 (2d Cir.1983) (if a comparison of the policy with the underlying complaints shows on its face that there is potential for coverage, the insurer must come forward to defend). Moreover, the claims must be taken as pleaded, even if they are demonstrably groundless, false, or fraudulent. *Colon v. Aetna Life & Cas. Ins.*, 104 A.D.2d 517, 479 N.Y.S.2d 884 (3d Dep't 1984), *aff'd*, 66 N.Y.2d 6, 494 N.Y.S.2d 688, 484 N.E.2d 1040 (1985) (insurer had duty to

defend driver as well as owner in personal injury, even though insurer reasonably concluded driver did not have owner's permission to drive the car, where complaint alleged driver had owner's permission and issue had not been judicially resolved prior to trial). "The insurer's duty to defend includes the defense of those actions in which alternative grounds are asserted, some within and others without the protection purchased and extends to any action . . . in which facts are alleged within the coverage afforded by the policy." *Utica Mutual Insurance Co. v. Cherry*, 38 N.Y.2d 735, 381 N.Y.S.2d 40, 343 N.E.2d 758 (1975); *see Olin Corp. v. Insurance Co. of North America*, 603 F.Supp. 445, 448 (S.D.N.Y.1985).

■ The Wilmorite complaint alleges that contamination of the site occurred during the time that Boyce Thompson "owned and operated the whole of the site." Complaint, ¶ 38. The allegation thus covers a time span encompassing the years from roughly 1924 to October 1969, when Boyce Thompson sold the site to Gestetner. Policies OBP 46480 and OBP 66186 together provided CGL insurance coverage during the period of April 5, 1966 to April 4, 1972. There is no question that the period of time in which the damage is alleged to have occurred in the Wilmorite complaint and the coverage period of the two insurance policies overlap. Should the complaint be proven true, the time of injury alleged in the complaint occurred during this coverage period. Therefore, with regard to the question of whether the complaint against Boyce Thompson alleges an injury occurring within the period of policy coverage, the answer must be yes. It also follows

---

scope of the contamination has never been defined.

7. In *State of New Jersey v. Signo Trading Int'l, Inc.*, 235 N.J.Super. 321, 562 A.2d 251 (App.Div. 1989), *cert. granted*, 118 N.J. 227, 570 A.2d 980 (1990), the court held that an owned property exclusion precluded the insurer's duty to indemnify the costs of a clean-up undertaken on the insured's property despite the fact that if the contamination were left in place, it potentially posed a hazard to the public. In that case, the complaint asserted that "defendants had al-

lowed hazardous substances to discharge from containers onto the floor of the warehouse, from where they might 'flow or runoff' into the waters of the State" and that the conditions on the property "impaired, polluted and contaminated the environment." *Id.* 562 A.2d at 253.

But in *Unigard Mut. Ins. Co. v. McCarty, Inc.*, Civil No. 83–1441 (D.Idaho July 22, 1988), the court concluded that the owned property exclusion did not bar coverage despite the lack of evidence that the PCBs had not spread to adjacent lands or into groundwater.

that since Boyce Thompson no longer owned the site after October 1969, any insurance purchased after that time would not supply coverage. We hold, therefore, that OBP 106621 does not provide the basis for invoking a duty to defend the Wilmorite action.

■ However, while even one policy covering some of the years in question would be sufficient to invoke the duty to defend, it must be clear that the policy in question covers the property upon which the damage has occurred and that the damage, as alleged in the complaint, occurred while the premises were being used as envisioned in the policy. Here, a critical factual dispute emerges.

■ Page one of both OBP 46480 and OBP 66186 state that "[i]nsurance applies only to those Coverages for which a limit of liability is shown and this Company shall not be liable for more than the limit of liability specified for each Coverage at the following premises, used for OFFICE and related purposes: See page 1 cont'd." The continuations of both OBP 46480 [8] and OBP 66186 [9] list specific addresses and premises covered by the policies.

INA suggests that the phrase be read literally. After reviewing the list of premises, it is difficult to find that agricultural and horticultural activities were not contemplated as being within the scope of the policy. However, INA argues, at the very least, experimental application of hazardous pesticides, disposal of hazardous chemicals, as alleged in the Wilmorite complaint, and maintenance of a landfill containing hazardous wastes cannot constitute the designated purposes suggested by the list of premises covered. Therefore, INA asserts, certain factual questions exist with respect to whether these policies provide or were intended to provide liability coverage for the activities at the Truman Avenue site that allegedly led to the contamination underlying the Wilmorite complaint.[10]

While we are unwilling to adopt a literal reading of this phrase, there is, nonetheless, a question about what the phrase "OFFICE and related purposes" was intended to mean in the context of these particular policies. Though the general rule is that any ambiguities in an insurance policy should be construed against the insurer, *Vargas v. INA*, 651 F.2d 838 (2d Cir.1981), we feel that, in this case, further factual development of this issue is warranted. Indeed, INA has argued that further discovery is needed to uncover information which would reveal whether the premises listed in the insurance policies were indeed used for OFFICE and related purposes as required by the policies.

---

8. OBP 46480 lists the following properties:
 1. 1086 N. Broadway, Yonkers, N.Y.—main building and adjacent greenhouses # 1 & 2.
 2. West Annex Green Houses # E & F, G & H
 3. Two Green Houses # K–1 & K–2
 4. Green House # 1
 5. Truman Ave., W/S of N/W corner of Freemont St. Napera Park, Yonkers, N.Y.
 In 1967, two other properties were added to the policy: 16 Pomona Ave., Yonkers, N.Y. and Whitman Property (across from 1086 N. Broadway) Yonkers, N.Y.
 In 1968, 1048 North Broadway was added to the policy.

9. OBP 66186 lists the following premises:
 1. 1086 N. Broadway, Yonkers, N.Y.—Main Bldg. & adj. greenhouses # 1 & 2
 2. West Annex Greenhouses # E & F, G & H
 3. Two greenhouses # K–1 & K–2
 4. Greenhouse # 1
 5. Stonehouse—126 Odell Ave., Yonkers, N.Y.
 6. Stone & Frame barn—134 Odell Ave., Yonkers, N.Y.

Additional premises were added at the inception of the policy:
 1. Dennis Farm, Stamfordville, Dutchess County, New York
 2. Empire Star Mine, Grass Valley, California
 3. 177 Truman Avenue, Yonkers, N.Y.
 4. 1109 N. Broadway, Yonkers, New York
 5. Hudson River Country Club, Yonkers, New York
 6. 178 Pomona Avenue, Yonkers, New York

10. INA contends that there is an issue of fact as to whether the areas where the contamination occurred were even covered by the policies. OBP 46480 describes Truman Avenue as "Truman Ave., W/S of N/W corner of Freemont St., Napera Park, Yonkers, N.Y." OBP 66186 lists a covered premise as 177 Truman Ave., Yonkers, N.Y." A number of other addresses appear which also might apply to the site. Thus, a factual question exists as to the metes and bounds of the designated premises in the policies.

Furthermore, collateral to the issue of how the premises were used, is the question of the intentions of INA and Boyce Thompson when they entered into this contract of insurance. Such resolutions are not properly made on a motion for summary judgment, "where the district judge is charged with 'issue-finding, not issue-resolution.'" *Eye Associates, P.C. v. IncomRx Systems Ltd. Partnership*, 912 F.2d 23, 27 (2d Cir.1990), quoting *United States v. One Tintoretto Painting Entitled "The Holy Family with Saint Catherine and Honored Donor"*, 691 F.2d 603, 606 (2d Cir. 1982). We must agree with INA's position. Moreover, we cannot create a duty to defend far beyond that which the defendant could have anticipated when it issued this policy. *Lionel Freedman, Inc. v. Glens Falls Ins. Co.*, 27 N.Y.2d 364, 318 N.Y.S.2d 303, 267 N.E.2d 93, *reargument denied*, 28 N.Y.2d 859, 322 N.Y.S.2d 1029, 271 N.E.2d 236 (1971).

Coloring our analysis is the fact that discovery is not due to conclude in this case until December 20, 1990. Thus, evidence which could resolve these questions could very well emerge in the near future now that the issues have been focused. We are not excluding the possibility that the phrase "OFFICE and related purposes" and its relationship to the entire policy may be interpreted as a matter of law. But given that discovery has not yet concluded, it seems premature to close the door on both sides' ability to shed light on the meaning of this policy term.

Boyce Thompson's motion for summary judgment must be denied as premature because a factual question exists which further discovery may resolve. As a corollary matter, INA's cross-motion on the issue of the duty to defend must also be denied because its resolution necessarily rests upon the outcome of the Boyce–Thompson motion.

INA's motion for summary judgment seeking a declaration that it has no duty to indemnify Boyce Thompson in the Wilmorite action must also await resolution of the intended meaning of the disputed phrase. While the duty to defend is broader than the duty to indemnify, here a question exists as to whether any coverage at all is owed to Boyce Thompson by INA. "It is well settled that because the duty to defend is broader than the duty to indemnify, a finding by the court that there is no duty to defend automatically means there is no duty to indemnify." *State of New York v. Blank*, 745 F.Supp. 841, 844 (N.D.N.Y. 1990), *citing EAD Metallurgical*, 905 F.2d at 11. Therefore, INA's motion is denied; it may, however, be renewed in the future.

## III. CONCLUSION

Both summary judgments motions before us today are denied. Discovery in this case is scheduled to end on December 20, 1990. The parties may petition for a two month extension of discovery within ten days of this order. This will give both parties ample time to uncover any information which would shed light on how the parties intended to construe the phrase "OFFICE and related purposes." After discovery has ended, both parties may renew their motions for summary judgment.

SO ORDERED.