OPINION OF THE COURT
Jasen, J.
The question presented on this appeal is whether the exclusions from liability coverage contained in the insurance policies at issue negate the insurer’s duty to defend.
This is an action brought by Seaboard Surety Company (Seaboard) for a declaratory judgment that it had no duty to defend or indemnify The Gillette Company (Gillette) or J. Walter Thompson Company (Thompson) under separate but similar insurance policies, each known as a “Libel, Slander, Copyright, Piracy, Plagiarism, and Privacy Liability Policy” (Libel Policy). Previously, Seaboard had refused to defend Gillette and Thompson in a suit brought against them by the Alberto-Culver Company (Alberto).
In 1974, a product manufactured by Gillette was advertised on national television in a commercial prepared by Thompson. The commercial compared a rival product manufactured by Alberto unfavorably to Gillette’s product in a demonstration depicting the supposed advantages of the latter. Alberto brought suit in Federal court in Chicago against both Gillette and Thompson, seeking damages and injunctive relief on the ground that its product had been wrongfully portrayed. Alberto’s complaint included claims of unfair competition, deceptive trade practices, consumer fraud and deceptive business practices, and common-law libel. Alberto alleged, inter alia, that the commercial “falsely implie[d]” deficiencies in its product, “falsely” and “unfairly disparage[d] [plaintiff’s] business”, its reputation “and its * * * products”, and featured Alberto’s trademark “without [plaintiff’s] authorization or consent”. The complaint specifically asserted violations of several Federal and State laws, including an Illinois statute prohibiting deceptive trade practices (defined as “disparaging] the goods, services or business of another by false or misleading representation of fact” [111 Rev Stat, 1973, ch 121[1]/2, § 270, subd (a); §§ 311-313]), and another *308 prohibiting the unauthorized use of brand names or trademarks (111 Rev Stat, 1973, ch 140, §§ 26, 28).
At the commencement of the Alberto action, Gillette and Thompson requested that Seaboard provide them with a defense under their separate insurance policies. Seaboard disclaimed all coverage under the policies and declined. Repeated requests throughout the course of the action met with continued refusal. Finally, in 1979, the Alberto action was settled by Gillette and Thompson and they demanded that Seaboard pay their settlement as well as defense costs. Again Seaboard refused.
Shortly thereafter, Seaboard commenced this action for a declaration that it properly refused to defend Gillette and Thompson in the Alberto action, and that it has no duty to indemnify them for any part of the settlement in that action or for any costs or legal expenses they incurred. Gillette and Thompson counterclaimed for reimbursement of their defense costs and for the amount of the settlement. The action against Gillette was dismissed by Special Term by reason of the pendency of a similar action instituted by Gillette in Massachusetts. In the action against Thompson, Special Term granted that party’s motion for partial summary judgment, holding that Seaboard had a duty to defend Thompson in the Alberto action, despite the possible limitations on Seaboard’s duty to indemnify. The Appellate Division affirmed, without an opinion.[1]
In the interim, the Appellate Division reversed Special Term’s prior dismissal of Seaboard’s action as against Gillette. Then, in a motion identical to Thompson’s, Gillette sought partial summary judgment on Seaboard’s duty to defend, and both Gillette and Thompson sought summary judgment awarding them actual defense costs incurred in the Alberto action or an immediate trial to determine the amount of damages.[2] Special Term granted Gillette’s motion on Seaboard’s duty to defend and granted the joint motion by ordering a severance and trial on the defense cost claims.
The Appellate Division affirmed, again without opinion, and subsequently granted Seaboard’s motion for leave to appeal to *309 this court certifying the following question: “Was the order of the Supreme Court, as affirmed by this Court, properly made?” We now affirm and answer the certified question in the affirmative for the following reasons.
The insurance policies issued by Seaboard to Gillette and Thompson, in effect at all relevant times, are virtually identical. They each contain sections which outline with some specificity what is covered and what is excluded from coverage. Under the heading “insuring agreements”, each policy contains the following pertinent provisions describing the scope of coverage:
“Indemnity 1. To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, as the result of any final judgment for money damages resulting from
“(a) libel, slander, defamation or
“(b) any infringement of copyright or of property rights or title or of slogan or
“(c) piracy, plagiarism or unfair competition or idea misappropriation under implied contract or
“(d) any invasion of rights of privacy committed or alleged to have been committed in any advertisement, publicity article, broadcast or telecast and arising out of the Insured’s advertising activities.[3]
“Service 2. To defend, in the name and on behalf of the Insured, any suit seeking damages for any of the above causes, even if such suit is groundless, false or fraudulent.”
Under the heading “this agreement is subject to the following conditions”, each policy contains a list of what is not included in its coverage. As modified by certain endorsements, these sections provide in pertinent part:
“Exclusions A. This Policy does not cover any liability for:
* * * ■
“4. Incorrect description of any article or commodity, or any claim or suit based upon or arising out of alleged false, misleading, deceptive, fraudulent or misrepresenting advertising or to any claim or suit for unfair competition based thereon.[4]
* * *
*310 “8. Any claim, suit or action brought against the Insured because of an act committed by that Insured with knowledge the same constituted any of the hazards insured by this policy. ’[5]
While Seaboard concedes that the allegations in the Alberto complaint fall within the scope of the inclusory sections of each policy entitled “insuring agreements”, it, nevertheless, contends that the exclusory provisions upon which the agreements are explicitly conditioned negate coverage for the Alberto acti on and, thereby, freed it from any duty to defend Gillette and Thompson therein. Under the rules governing an insurer’s duty to defend and the effect to be given exclusory provisions in a policy, Seaboard’s contentions must fail and the policies in question must be construed to provide Gillette and Thompson with coverage for defending against the Alberto action.
Where an insurance policy includes the insurer’s promise to defend the insured against specified claims as well as to indemnify for actual liability, the insurer’s duty to furnish a defense is broader than its obligation to indemnify. (International Paper Co. v Continental Cas. Co., 35 NY2d 322, 326; Lionel Freedman, Inc. v Glens Falls Ins. Co., 27 NY2d 364, 368.) The duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be. (Goldberg v Lumber Mut. Cas. Ins. Co., 297 NY 148, 154.) The duty is not contingent on the insurer’s ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy’s general coverage or within its exclusory provisions. Rather, the duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased. (Ruder & Finn v Seaboard Sur. Co., 52 NY 2d 663, 669-670; Schwamb v Fireman’s Ins. Co., 41 NY2d 947, 949; Utica Mut. Ins. Co. v Cherry, 38 NY2d 735, 737; Prashker v United States Guar. Co., 1 NY2d 584, 590, 592.) Though policy coverage is often denominated as “liability insurance”, where the insurer has made promises to defend “it is clear that [the coverage] is, in fact, ‘litigation insurance’ as well.” (International Paper Co. v Continental Cas. Co., supra, at p 326.) As such, “[s]o long as the claims [asserted against the insured] may rationally be said to fall within policy coverage, whatever may later prove to be the limits of the insurer’s responsibility to pay, *311 there is no doubt that it is obligated to defend.” (Schwamb v Fireman’s Ins. Co., supra, at p 949.)
Moreover, whenever an insurer wishes to exclude certain coverage from its policy obligations, it must do so “in clear and unmistakable” language. (Kratzenstein v Western Assur. Co., 116 NY 54, 59; see, also, Hartol Prods. Corp. u Prudential Ins. Co., 290 NY 44, 49-50.) Any such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction. (Taylor v United States Cas. Co., 269 NY 360, 363; Griffey v New York Cent. Ins. Co., 100 NY 417, 421; Rann v Home Ins. Co., 59 NY 387, 389; see, also, Wagman v American Fid. & Cas. Co., 304 NY 490.) Indeed, before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case (Neuwirth v Blue Cross & Blue Shield, 62 NY2d 718; Prashker v United States Guar. Co., 1 NY2d 584, 592, supra; Slocovich v Orient Mut. Ins. Co., 108 NY 56, 66), and that they are subject to no other reasonable interpretation (cf. International Paper Co. v Continental Cas. Co., supra, at p 325; Hoffman v Aetna Fire Ins. Co., 32 NY 405, 413-415).
Here, it cannot be said that the provisions of the insurance policies clearly negated Seaboard’s duty to defend against every allegation asserted in Alberto’s complaint. Some of the claims against Gillette and Thompson fall within the general inclusory provisions of the policies and are not unambiguously excepted from coverage by the exclusions. The inclusory provisions contained in the sections titled “insuring agreements” explicitly predicate the duty to defend on the commencement against the insureds of “any suit seeking damages for any of the above causes”. (Emphasis added.) Consistent with the case law, these provisions triggered Seaboard’s duty to defend as soon as Alberto brought an action alleging, as it did, such misconduct as disparagement of Alberto and its products, unauthorized use of Alberto’s brand name or trademark, unfair competition, and common-law libel — all of which fairly fall within the scope of the various torts listed in the inclusory provisions of the policies. The veracity of the allegations and the ultimate liability of Gillette and Thompson, as well as the ultimate obligation of Seaboard “to pay by reason of liability”, under its duty to indemnify, are irrelevant to its duty to defend.
Nor do the particular exclusory provisions relied upon by Seaboard negate its duty to defend under the facts in this case. If *312 Seaboard is to be “relieved of [its] duty to defend it is obligated, to demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation.” (International Paper Co. v Continental Cas. Co., supra, at p 325 [emphasis added].) But Alberto’s complaint against Gillette and Thompson did include allegations whi ch were not explicitly listed in the exclusions. Alberto’s claims of product disparagement and misuse of trademark in violation of Illinois’s consumer fraud and deceptive trade practices laws — which are not disputed by Seaboard to fall within the scope of the policy’s general inclusions — cannot be said “solely and entirely” to fall within either of the exclusory provisions relied upon by Seaboard. Neither of these claims is contingent upon an “[i]ncorrect description” of the insured’s own product[6] and neither of these claims is exclusively predicated upon allegations of knowing, willful or intentional conduct on the part of Gillette or Thompson. Rather, as they are stated in Alberto’s complaint, these claims allege facts and grounds which brought the lawsuit within the coverage of the policies and which Seaboard has failed to demonstrate fall necessarily within the policies’ exclusions.
In sum, appellant insurer has not established on this motion for summary judgment that as a matter of law it has no duty to defend. “A declaration that there is no obligation to defend cou ld now properly be made only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy” (Spoor-Lasher Co. v Aetna Cas. & Sur. Co., 39 NY2d 875, 876).
We have considered appellant’s other contentions and find them to be without merit.
Accordingly, the order of the Appellate Division should be affirmed, and the certified question answered in the affirmative.
Chief Judge Cooke and Judges Jones, Wachtler, Meyer, Simons and Kaye concur.
Order affirmed, etc.

. Subsequently, the Appellate Division denied Seaboard’s motion for reargument or for leave to appeal to this court. Thereafter, this court dismissed Seaboard’s motion for leave to appeal by reason of nonfinality of the Appellate Division’s order.

. When Gillette moved for partial summary judgment, Seaboard cross-moved for a stay pending the outcome of its appeal on Thompson’s motion. Special Term granted the stay and did not consider the instant motions — i.e., Gillette’s motion and its joint motion with Thompson — until the Appella te Division affirmed the partial summary judgment granted in Thompson’s favor.

. This clause in Thompson’s policy concluded with “arising out of the Insured’s business of Advertising Agents.”

. This exclusion, as stated, is set forth in an endorsement to exclusion No. 4 in the Gillette policy and to exclusion No. 5 in the Thompson policy.

. This exclusion appears as No. 9 in the Thompson policy.

. The parties agree that this is the meaning of the “Incorrect description” exclusion.