**STANDARD & POOR'S
CORPORATION,
Plaintiff,**

v.

**CONTINENTAL CASUALTY
COMPANY, Defendant.**

**No. 87 Civ. 6543 KC.**

United States District Court,
S.D. New York.

Sept. 25, 1989.

William Dallas, Sullivan & Cromwell, New York City, for plaintiff.

Denny Chin, Campbell, Patrick & Chin, New York City, for defendant.

### MEMORANDUM AND ORDER

CONBOY, District Judge:

In 1980, defendant Continental Casualty Company ("Continental") issued to Standard & Poor's ("S & P"), a prominent publisher of business and financial information, an insurance policy covering loss from, *inter alia*, "any act, error or omis-

sion, misleading statement or misstatement" committed by S & P. The policy provided for a $500,000 deductible per "occurrence" and a $20,000,000 liability limit per "occurrence" with an annual aggregate liability limit of $20,000,000. "Occurrence" is defined in the policy as follows:

"Occurrence" means all communication, utterance or dissemination of matter published, printed, distributed, exhibited, advertised or otherwise made available on one or a series of dates relating to the same subject, person or class of persons or in all things communicated in a book of one or more volumes or any repetitions thereof.

In 1977, the Washington Public Power Supply System ("the System") began issuing bonds to finance the construction of two nuclear power plants to be located in the state of Washington. Bonds were issued on fourteen separate occasions between March 1977 and 1981. Each time a bond series was issued, S & P assigned a creditworthiness rating to it. Each rating was included in the offering memorandum for the corresponding series, and was also published in various periodicals. In the early 1980s, the power plant projects were beset by cost overruns and other problems, culminating in the System's default on the bonds in August of 1983.

Numerous lawsuits followed the default, and S & P was named as a defendant in several of them. In response to inquiries from S & P's counsel, Continental confirmed, by letter, that the policy applied. The letter suggested that S & P's liability, if any, was for a single occurrence within the meaning of the policy. In July 1983, the claims against S & P were dismissed without prejudice, but were reinstated in 1986. S & P again contacted Continental, and Continental again confirmed coverage. In 1987, however, after reviewing what it claimed to be "additional information" about the bond ratings, Continental reversed its position, claiming that each rating was a separate occurrence within the meaning of the policy. This reversal followed S & P's request for reimbursement for the cost of defending the reinstated claims, which cost exceeded the single deductible amount of $500,000 but was significantly less than $7,000,000. Thus, the upshot of Continental's about face on policy coverage was to preclude S & P from recovering anything since their defense costs did not exceed 14 deductibles.

In this diversity action, S & P seeks a declaration that Continental is obligated to reimburse S & P subject to a single $500,-000 deductible. S & P now moves for summary judgment arguing a) that the claims alleged in the underlying litigation fall within what S & P contends is the unambiguous definition of a single "occurrence" in the policy, or b) that the exchange of confirmatory letters in 1983 and 1986 constitutes a binding agreement to that effect regardless of the meaning of the original policy. Continental also moves for summary judgment arguing that a) each rating was a separate occurrence b) there was no amendment or waiver of the terms of the policy, and c) that S & P is not entitled to punitive damages on the theory that Continental acted in bad faith.

## DISCUSSION

At the outset, the Court rejects plaintiff's argument that the central issue in this case, the meaning of "occurrence" under the policy, can be resolved by reference to the factual allegations in the underlying litigation. In so arguing, S & P relies on the often stated proposition in "duty to defend" cases that the insurer must provide or pay for the insured's defense unless the insurer demonstrates that the allegations of the underlying complaint are subject to no reasonable interpretation that implicates the insurer's obligations under the policy. *See, e.g., International Paper Co. v. Continental Cas. Co.*, 35 N.Y.2d 322, 361 N.Y.S.2d 873, 875, 320 N.E.2d 619, 620–621 (Ct.App.1974). To state the rule, however, is to distinguish it since the focus of the dispute in such cases is the construction of the underlying complaint—"whether the *complaint* alleges any facts or grounds which bring the action within the protection purchased," *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (Ct.App.1984) (empha-

sis added)—and not the construction of the insurance policy.

The number and content of the S & P ratings that gave rise to the underlying claims against it are not disputed here (although the parties emphasize different aspects of the ratings in their papers). What is disputed is the intended application of the policy to the agreed facts, an issue entirely beyond the scope of the underlying action. Stated another way, if Continental's interpretation of the policy is the correct one, no reading of the complaint, no matter how favorable to S & P, renders S & P's conduct a single "occurrence" within the meaning of the policy. Allowing the fortuitous and, in context, irrelevant choice of descriptive language used by the litigants in the underlying lawsuit to resolve a dispute over the meaning of this insurance policy would be an extreme example of form prevailing over substance. *Cf. Parkset Plumbing & Heating Corp. v. Reliance Insurance Co.*, 87 A.D.2d 646, 448 N.Y. S.2d 739, 740 (2d Dep't 1982) (although determination of insurer's duty to defend must be drawn from the complaint, mere use of word "negligence" in complaint clearly sounding in contract cannot turn complaint into action for negligence).

■ Turning to the merits, it is fair to say, without necessarily implying that the interpretations offered by both sides are equally plausible, that the meaning of the term "same subject" in the insurance policy is ambiguous. Moreover, the proper interpretation of the clause is likely to turn, at least in part, on the inferences to be drawn from extrinsic evidence, e.g., defendant's several confirmations of a single-occurrence interpretation of the claims against S & P, see plaintiff's memorandum of law in support of summary judgment at 14–18, and S & P's own characterization of the subject of each rating, see defendant's memorandum of law in support of summary judgment at 17–21. Ordinarily, these two observations would lead to the conclusion that summary adjudication is inappropriate. This would not necessarily be the case, however, if, as S & P argues, the Court is obligated to resolve any arguable

ambiguity in the policy in favor of coverage. *Vargas v. Insurance Co. of North America*, 651 F.2d 838 (2d Cir.1981).

In rejecting this argument, the Court notes initially that the issue here is not, unlike in most cases, whether the policy applies but *how* it applies. In this regard, it is interesting to observe that neither of the two interpretations offered by the parties can be said in the abstract to be more favorable to one side than the other since, as the record in this case reflects, a particular interpretation may be favorable to one of the parties when the potential liability on the underlying claims is relatively large, but unfavorable when it is small. But more importantly, the rule of construction raised by S & P only applies where the insurance policy under consideration is drafted by the insurer.

> The principle that requires courts to resolve ambiguities in insurance contracts in favor of the insured, and against the insurer, is not a fundamental departure from established contract principles. Rather, it is one instance, albeit special and emphatic, of the widely recognized rule that resolves ambiguity in a contract against the contract's drafter.

*American Home Products, Corp. v. Mutual Ins. Co.*, 565 F.Supp. 1485, 1492 (S.D.N.Y.1983), *aff'd as modified*, 748 F.2d 760 (2d Cir.1984). Thus, where, as here, there is evidence that the insured had at least equal input into the drafting of the policy generally, and of the specific clause at issue, the application of *contra preferentem* is doubtful. *See Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 n. 2 (2d Cir.1983). Accordingly, both parties' motions for summary judgment on the construction of the policy are denied.

■ With respect to plaintiff's alternative contention that the exchange of confirmatory letters in May of 1983 and October of 1986 amounted to a modification of the policy, there is a genuine issue of material fact as to whether the exchange of letters, rather than constituting an objective manifestation of mutual intent to amend the original policy terms, represented nothing more than defendant's admission that the

underlying lawsuit involved a single occurrence within the meaning of the policy—not by any means an insignificant admission, since "[t]he parties' interpretation of the contract in practice, prior to litigation, is compelling evidence of the parties' intent," *Ocean Transport Line, Inc. v. American Philippine Fiber Industries, Inc.*, 743 F.2d 85, 91 (2d Cir.1984), but nonetheless not an admission that conclusively establishes an amendment to or waiver of the policy's terms. In addition, there is, at the very least, a material issue of fact as to whether the confirmatory letters can operate to amend the policy or waive its provisions in light of the endorsement requirement in Section VI(H) thereof.

Finally, although S & P has stated a claim for compensatory damages for breach of an implied covenant of good faith and fair dealing, Continental has the better of the argument on the question of punitive damages in Count IV. Even if S & P could demonstrate that Continental's denial of single-occurrence coverage was, under the circumstances, outrageous, it amounted to no more than a private wrong, thus precluding punitive damages. *Durham Ind., Inc. v. North River Ins. Co.*, 673 F.2d 37 (2d Cir.), *cert. denied*, 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982). The allegations in the complaint to the effect that Continental routinely shirks its obligations under insurance policies does not compel a different conclusion. The focus of the inquiry, in determining whether punitive damages are available, is not the defendant but the allegedly wrongful conduct giving rise to the complaint. Assuming, arguendo, that it was done in bad faith, Continental's contradiction of its earlier position on the policy was not a wrong directed at the general public. *See Supreme Auto Mfg. v. Continental Cas. Co.*, 126 A.D.2d 153, 512 N.Y.S.2d 820, 822 (1st Dep't 1987). The fraud cases cited by S & P are also unavailing because the elements of fraud have not been pled in this case.

Accordingly, Count IV of the Amended Complaint is dismissed as to punitive damages. Both motions for summary judgment are otherwise denied.

SO ORDERED.