**David L. SCHIFF, Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY and Insurance Company of North America, Defendants.**

**No. 91 Civ. 2669 (RPP).**

United States District Court,
S.D. New York.

Dec. 5, 1991.

Gordon Hurwitz Butowsky Shalov & Wein by Richard A. Roth and Scott N. Gelfand, New York City, for plaintiff.

Barry, McTiernan & Moore by Suzanne M. Halbardier, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action against two insurance companies demanding a declaration that each company is obligated to defend and to indemnify Plaintiff for any judgment, costs, and attorney's fees incurred in an action against Plaintiff pending in the Circuit Court of Cook County, Illinois. Plaintiff moves for summary judgment against Defendant Insurance Company of North America ("INA"), and INA cross-moves for summary judgment. For the reasons set forth below, Plaintiff's motion is denied, and Defendant INA's motion is granted.

## BACKGROUND

Plaintiff David L. Schiff, a New York resident, is President of Emerson, Reid & Company, Inc. ("ERC"), a New York corporation which acts as a general agency specializing in New York disability and benefits insurance. INA is a Pennsylvania insurance company which issued insurance to ERC in the form of an "Office Building Package Policy," effective from December 31, 1988 to December 31, 1989 (the "Policy").

At the time the Policy was issued, the Named Insured under the Policy was:

Emerson Reid & Co.

10 Columbus Circle

New York

Affidavit of David Schiff, sworn to on September 13, 1991 ("Schiff Aff."), Exh. A. However, at Mr. Schiff's request, the Policy was amended effective September 21, 1989 to add "David Schiff & Walter Taylor"[1] as Named Insured under the Policy. Schiff Aff., Exhs. B, C.

On October 30, 1989 an article written by Mr. Schiff entitled "Junk Art" was published in *Barron's* magazine. The article concerned several public companies which operate chains of art galleries, including Circle Fine Art Corporation. In response to this article, Circle Fine Art Corporation commenced an action in the nature of libel in Illinois state court against Mr. Schiff and Dow Jones & Company, the publisher of *Barron's*, charging interference with economic expansion and product disparagement (the "Underlying Action"). Affidavit of Richard Roth, sworn to on September 13, 1991 ("Roth Aff."), Exh. C.

In October 1990, Mr. Schiff was served with court papers relating to the Underlying Action. On January 4, 1991, Mr. Schiff forwarded the summons and complaint to his insurance broker at DeWitt, Stearns, Gutman & Co. ("DSG"), and on January 8, 1991 DSG sent the papers to INA. Schiff Aff. ¶¶ 6–7. By letter dated March 20, 1991, INA declined to provide coverage for or to represent Mr. Schiff in the Underlying Action. Schiff Aff. ¶ 8. INA's letter set forth the grounds for its denial of coverage and defense as follows:

The insuring agreement of Coverage B, page 4, Paragraph 1.a. of Form CG00011188, provides that "[INA] will pay those sums that the insured becomes legally obligated to pay as damages be-

---

1. Walter Taylor is the Senior President of ERC. Deposition of David L. Schiff of July 30, 1991 at 7.

cause of 'personal injury' ..." Personal injury is defined on Page 11 as "injury other than 'bodily injury', arising out of ... (d) oral or written publication of material that slanders or libels a person or organization or disparages the person's or organization's goods, products, or services ..." Personal injury coverage is conditioned on it being "caused by an offense arising out of your business, excluding advertising, publishing, broadcasting, or telecasting done by or for you ... (b.(1) Page 4 of same form)." Because the personal injury did not arise out of your business and because publishing is excluded, it is our position that the authorship and publication of the articles are not covered by the policy.

Section II of the same form defines who is an insured to include executive officers "but only with respect to their duties as your officers ... (Paragraph 1.c., Page 6)", and employees "but only for acts within the scope of their employment by you (2.a., Page 6)." In the acts giving rise to the suit, Mr. Schiff was not acting within his duties as an officer, nor was he acting within the scope of his employment. For these reasons also, the claim is not covered by the policy.

David Schiff is named as an additional insured on Form CG 201185, "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you." As his potential liability for publication of the article did not arise from the ownership, maintenance or use of those premises, this policy part does not provide coverage to David Schiff.

Schiff Aff., Exh. F.

Mr. Schiff filed the instant suit against INA seeking a declaration that INA is required to defend and to indemnify him in the Underlying Action and seeking compensatory damages for INA's alleged bad faith denial of coverage.[2] Mr. Schiff moves for summary judgment on all of his claims against INA, and INA cross-moves for summary judgment dismissing Mr. Schiff's claims.

## DISCUSSION

■■■ Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the Court must view the facts in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Mr. Schiff's claim is based on the Policy's coverage for losses arising from liability for "personal injury."[3] Schiff Aff., Exh. A, Form CG00011188 at 4. As Mr. Schiff acknowledges, the "Coverages" section of the Policy continues to provide:

> This insurance applies to ... Personal injury caused by an offense arising out of your business, *excluding advertising, publishing, broadcasting or telecasting done by or for you ...*

*Id.* at 4 (emphasis added).

On this motion, Mr. Schiff maintains, (1) that he is entitled to coverage since he was a separately named insured under the Policy, and (2) that the personal injury coverage limitation excluding "publishing ... done by or for you" is ambiguous, thus requiring INA to defend him in the Underlying Action.

---

2. The suit seeks similar relief from Federal Insurance Company ("Federal"), the issuer of another insurance policy. The pending motions do not concern Federal.

3. In the "Definitions" section of the Policy, "personal injury" is defined to include "injury ... arising out of ... [o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Schiff Aff., Exh. A, Form CG00011188 at 11.

A. "Named Insured" Under the Policy

In the section entitled "Who Is An Insured," the Policy provides:

> If you are designated in the Declarations as ... [a]n individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

Schiff Aff., Exh. A., Form CG00011188 at 6. Mr. Schiff argues that because the Policy was amended to add "David Schiff & Walter Taylor" to the Policy's named insured, he is a designated "individual" named insured, and therefore he is entitled to coverage for losses "with respect to the conduct of a business of which he is the sole owner." Mr. Schiff claims that he is the sole owner of his business as a free-lance writer, and therefore the Policy covers any losses arising therefrom.

INA maintains that the Policy only covers liability arising out of Mr. Schiff's business at ERC or out of his ownership, maintenance, or use of ERC's premises, and it does not cover liability arising from Mr. Schiff's unrelated business as a free-lance writer. However, INA bases its cross-motion for summary judgment on the Policy's specific coverage limitation excluding "publishing ... done by or for you."

The evidence before the Court does not clearly indicate that there was an intention by either party to extend the Policy by the amendment to cover Mr. Schiff's business as a free-lance writer, or that INA had notice of Mr. Schiff's business as a free-lance writer when it amended the Policy. Nevertheless, the Court will assume *arguendo* that the Policy covered Mr. Schiff's business as a free-lance writer and proceed to examine: (1) Mr. Schiff's argument that a duty to defend exists because the Policy's specific limitation excluding coverage for "publishing ... done by or for you" is ambiguous, and (2) INA's argument that this language is unambiguous as a limitation on the duties to defend and to cover.

B. The Policy's Coverage Limitation

■ Mr. Schiff argues that "Junk Art" was published not by or for him, but published by *Barron's* and published for *Barron's* readers. The construction of the Policy language urged by Mr. Schiff is overly-strained, and it indicates that he has lost sight of what is being construed. The coverage limitation at issue here applies to specific business *activities* or *functions* of an insured's business, namely advertising, publishing, broadcasting, and telecasting. Mr. Schiff claims that his "business" is that of free-lance writing. A function of the business of free-lance writing is the publishing of such writing, and the primary objective of a free-lance writer is to have his or her works published. Thus, if Mr. Schiff's business is in fact free-lance writing, the publishing of "Junk Art" was done either "by" or "for" him as those terms are normally construed in relation to that business. Where the plain language meaning of policy terms are clear, this Court will not "reach out and find an ambiguity" as Mr. Schiff's construction would require the Court to do. *In re Ambassador Group, Inc. Litigation,* 738 F.Supp. 57, 62 (E.D.N.Y.1990). *See also U.S. Fidelity & Guaranty Co. v. Annunziata,* 67 N.Y.2d 229, 501 N.Y.S.2d 790, 791, 492 N.E.2d 1206, 1207 (1986); *Francis v. INA Life Ins. Co.,* 809 F.2d 183, 185 (2d Cir.1987) (applying New York law).

■ Mr. Schiff also claims that the Policy uses the terms "publishing" and "publication" interchangeably and in an ambiguous manner, and therefore INA is required to defend him in the Underlying Action. *Seaboard Surety Co. v. Gillette Co.,* 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984). The Policy does define "personal injury" to include "injury ... arising out of ... [o]ral or written publication" which slanders, libels, or disparages a product. Schiff Aff., Exh. A. Form CG00011188 at 11. Thus, the Policy covers a slanderous, libelous, or product disparaging oral or written publication "arising out of your business, excluding advertising, publishing, broadcasting, or telecasting done by or for you." *Id.* at 4. Mr. Schiff argues that the Policy's specific "Exclusion" for, "Personal injury ... [a]rising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of

its falsity," implies coverage for all oral or written publication done without knowledge of its falsity. *Id.* at 4. He argues that these non-exclusions of "publication" are in conflict with the exclusion of "publishing ... done by or for you" in the coverage limitation, and that therefore the Policy is ambiguous.

■ This argument is disingenuous. The Policy's coverage limitation clearly indicates that injury arising from the business activities or functions of "advertising, publishing, broadcasting or telecasting" is not covered. That the Policy does not specifically exclude an "oral or written publication" done *without* "knowledge of its falsity" is not in conflict with this coverage limitation. "Publication" as used in the "Exclusions" section is clearly used as a term of art for its meaning in the context of libel and slander actions. Because it is not synonymous with "publishing" as used in the coverage limitation to indicate a business activity or function, the Court does not find any ambiguity to exist. Clearly, libel, slander, or product disparagement by an oral statement or by a letter would be covered. Where there is no ambiguity, this Court is unwilling to enlarge the liability of the insurer beyond the express terms of the contract between insurer and insured. *Moshiko, Inc. v. Seiger & Smith, Inc.*, 137 A.D.2d 170, 529 N.Y.S.2d 284, 288 (1st Dep't 1988), *aff'd* 72 N.Y.2d 945, 533 N.Y.S.2d 52, 529 N.E.2d 420. *See also Breed v. Ins. Co. of North America*, 46 N.Y.2d 351, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1282 (1978).

## C. INA's Bad Faith

Mr. Schiff's argument that INA's disclaimer of coverage was made in bad faith is not valid. In its denial of coverage, INA did address the issues here considered by the Court.

## CONCLUSION

Accordingly, Plaintiff's motion for summary judgment is denied, and INA's motion for summary judgment is granted. INA and Federal are ordered to attend a pre-trial conference on Monday December 16, 1991 at 9:00 a.m. in courtroom 302.

IT IS SO ORDERED.