ASSICURAZIONI GENERALI,
S.p.A., Plaintiff,

v.

PUBLIC SERVICE MUTUAL INSUR-
ANCE COMPANY, a/k/a PSM, Market-
ing Industries Group, Ltd, formerly
known as Service Furniture Delivery,
Inc., Bloomingdale's Inc., and Willie
Wiggins, Defendants.

Civ. A. No. 94–6054.

United States District Court,
E.D. Pennsylvania.

May 9, 1995.

Bernard E. Jude Quinn, German, Galla-
gher & Murtagh, Philadelphia, PA, for Assi-
curazioni Generali, S.p.A.

Michael J. Cawley, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Eileen C. McGinley, Margolis, Edelstein & Scherlis, Philadelphia, PA, for Public Service Mut. Ins. Co.

David Storper, Greatneck, NY, for Marketing Industries Group, Ltd.

Jonathan M. Petrakis, Frey, Petrakis & Deeb, Philadelphia, PA, for Bloomingdales, Inc.

Stuart M. Niemtzow, Alan L. Spielman, Ltd., Philadelphia, PA, for Willie Wiggins.

*MEMORANDUM AND ORDER*

KATZ, District Judge.

**AND NOW,** this 9th day of May, 1995, upon consideration of Plaintiff, Assicurazioni Generali, S.p.A.'s Motion For Summary Judgment, Motion For Summary Judgment Of Public Service Mutual Insurance Company Pursuant to F.R.C.P. 56, Motion Of Marketing Industries Group, Ltd. ("MIG") For Summary Judgment, Motion Of Defendant Bloomingdale's, Inc. For Summary Judgment, and the responses thereto, it is hereby **ORDERED** that:

1. Plaintiff, Assicurazioni Generali, S.p.A.'s Motion For Summary Judgment is **GRANTED** in part and **DENIED** in part;

2. Motion For Summary Judgment Of Public Service Mutual Insurance Company Pursuant to F.R.C.P. 56 is **GRANTED** in part and **DENIED** in part;

3. Motion Of Marketing Industries Group, Ltd. ("MIG") For Summary Judgment is **GRANTED;** and

4. Motion Of Defendant Bloomingdale's, Inc. For Summary Judgment is **GRANTED.**

*Background*

The relevant facts in this declaratory judgment action are not in dispute.[1] The controversy involves two insurance companies, a household furniture seller, the seller's contracted delivery company and an aggrieved freight elevator operator. In July 1992, the freight elevator operator, Willie Wiggins, worked in a Philadelphia apartment building (the "Building"). Wiggins was allegedly injured on July 23, 1992, when a bed frame fell on his foot as it was being removed from the Building's freight elevator. The freight elevator was stationary and Wiggins was standing outside elevator in the nineteenth floor hallway of the Building when the accident occurred. The offending bed frame was purchased by a nineteenth floor resident of the Building from defendant Bloomingdale's, Inc. ("Bloomingdale's"), and was being delivered by defendant Marketing Industries Group, Ltd. ("MIG") to the resident's apartment when it fell on Wiggins' foot.

On June 30, 1994, Wiggins filed a negligence action in Philadelphia Common Pleas Court (the "Common Pleas Action") against MIG and Bloomingdale's alleging injuries to his foot resulting from the bed frame's fall. The pertinent allegations in Wiggins' Common Pleas Action complaint are:

12. While [MIG's] employees were attempting to pull the furniture out of the elevator, the employees negligently caused the bed frame to fall on Mr. Wiggins' left foot, resulting in severe and permanent injuries.

13. Defendant [MIG's] negligence consisted, *inter alia,* of the following:

(a) unloading the elevator without due regard for the rights, safety and position of the plaintiff;

(b) failing to keep the bed frame under proper control during delivery;

(c) employing inadequate delivery procedures and techniques;

(d) failing to five proper and sufficient warning of the movement of the bed frame ...

19. At all times relevant to the alleged negligence of the employees of [MIG], [MIG] was acting in the scope of its

---

1. Counsel for Assicurazioni Generali, Public Service Mutual and Marketing Industries group have informed the court of their agreement that "there are not factual issues in dispute," and have requested disposition "by way of the Cross–Motion for summary judgment filed with the court." Storper Letter (4/27/95); Quinn Letter (4/25/95).

employment as a duly authorized agent of Bloomingdale's for purposes of delivering furniture purchased at Bloomingdale's stores....

18. [sic] Defendant Bloomingdale's negligently and carelessly entrusted the delivery of furniture purchased at its King of Prussia, Pennsylvania store to [MIG].

(Pl.'s Ex. I).

On the date the bed frame allegedly fell on Wiggins' foot, MIG maintained a truckers insurance policy issued by plaintiff Assicurazioni Generali, S.p.A. ("Generali") and a general liability policy issued by defendant Public Service Mutual Insurance Company ("PSM"). Generali commenced a defense of MIG in the Common Pleas Action on September 21, 1994. (PSM Ex. E). To date, PSM has denied any obligation to defend or indemnify MIG in the Common Pleas Action. On October 4, 1994, Generali initiated this action seeking: (1) a declaration that PSM is obligated to defend and indemnify MIG in the Common Pleas Action; (2) a declaration that Generali is not obligated to defend MIG in the Common Pleas Action; and (3) other appropriate relief. Compl. ¶ 33.[2] In its Answer, PSM, citing the auto exclusion in its policy, denies any obligation to defend or indemnify MIG. The issue is which of the insurance policies, if any, provides liability coverage for the injuries alleged in Wiggins' Common Pleas Action.

The Generali policy provides liability coverage as follows:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

(Pl.'s Ex B (Truckers Coverage Form at 2.)). The Generali policy specifically excludes coverage for:

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

*Id.* (Truckers Coverage Form at 4). The PSM policy provides general liability coverage with an exclusion for:

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others, of any aircraft, "auto", or watercraft owned or operated by, or rented or loaned to any insured. Use includes operation and "loading or unloading".

(Pl.Ex. A (Commercial General Liability Coverage Form at 2)).[3]

The parties' positions are framed by the language of the policies. Generali makes two arguments. Generali's primary argument is that the accident that caused Wiggins' claimed injuries did not result from the ownership, maintenance or use of a covered "auto" and, therefore, Wiggins' alleged injuries are not covered by the Generali policy. Specifically, Generali argues that injuries caused by the negligent handling of a bed frame in an elevator on the nineteenth floor of a building do not result from the inherent nature of an automobile. Pl.Mem. at 5–6. In the alternative, Generali argues that, if, as a general matter, such injuries are covered, in this particular instance coverage is excluded because the bed frame was moved by a mechanical device (i.e. an elevator). *Id.* at 4.

In response, PSM agues that the Generali policy provides coverage because under the

---

**2.** In their various motions, the parties have raised the issue of attorney's fees. *See e.g.,* Brief of MIG at 8 (citing. *Aetna Casualty and Surety Co. v. Merchants Mut. Ins.,* 78 A.D.2d 176, 435 N.Y.S.2d 125 (1980). The present record does not contain sufficient information for the court to award attorney's fees.

**3.** The PSM policy further states that:

"Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading and unloading" does not include the movement of property by means of a mechanical device other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

applicable law the phrase "use" of a covered "auto" is read broadly and includes the complete transportation of goods between the vehicle and the final place from or to which they are being delivered. PSM also argues that this broad reading of "use" gives effect to the automobile exclusion in its policy. Bloomingdale's and MIG take the position that both insurance policies provide coverage for the claimed injuries.[4]

*Analysis*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[5]

■■■ This case involves two New York insurers, a New York insured and a Pennsylvania state court claim initiated by a Pennsylvania plaintiff against the New York insured and the insured's alleged principal. Pennsylvania law governs the choice of law analysis in this case. *Shields v. Consolidated Rail Corp.,* 810 F.2d 397, 399 (3d Cir.1987) (federal court sitting in a diversity case must apply the choice of law rules of the forum state); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania's choice of law approach combines the Restatement (Second) of Conflicts of Law, commonly known as the most significant relationship test, with interest analysis. *Compagine des Bauxites v. Argonaut–Midwest Ins. Co.,* 880 F.2d 685 (3d Cir.1989) (citing *Griffith v. United Airlines,* 416 Pa. 1, 203 A.2d 796 (1964)); *Blakesley v. Wolford,* 789 F.2d 236 (3d Cir.1986). In a contract action, to determine which jurisdiction's law should be applied, Pennsylvania courts are to identify the action's contacts

with each of the competing jurisdictions, including the place of contracting, the place of negotiation of the contract, the place of the property subject to the contract, the place of performance, and the domicile of the parties, and then determine the importance of the respective contacts by considering the nature of the claim, the issues and the purposes of the legal rules involved. *Compagine des Bauxites,* 880 F.2d 685, 689–691 (3d Cir. 1989); *Griffith,* 416 Pa. at 15–16, 203 A.2d at 802–803; *American Int'l Underwriters Corp. v. Zurn Industries, Inc.,* 771 F.Supp. 690 (W.D.Pa.1991). This is an insurance coverage dispute where interpretation of the relevant policy provisions is the paramount issue facing the court. Therefore, the contacts and interests of New York significantly outweigh those of Pennsylvania, and, where any true conflict exists, New York insurance law will be applied.

■■■ New York follows the general rule that an insurance policy is to be construed in favor of the insured and that any ambiguities are to be resolved in favor of the insured and against the insurer. *United States Fid. & Guar. Co. v. Annunziata,* 67 N.Y.2d 229, 232, 501 N.Y.S.2d 790, 492 N.E.2d 1206 (1986). This policy of viewing coverage expansively is particularly applicable when ambiguities are found within an exclusionary clause. *Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984) (exclusions "must be specific and clear in order to be enforced" and "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction").

■■■ Generali's principal argument is that its policy does not provide coverage for Wiggins' claimed injuries because they did not "arise out of the inherent nature of an automobile." Pl.'s Mot. at 5–6 (citing *Manhattan and Bronx Surface Transit Operating Authority (Gholson),* 71 A.D.2d 1004, 420 N.Y.S.2d 298 (1979). This argument is in-

---

**4.** Wiggins argues that at least one of the insurers owes MIG coverage.

**5.** When ruling on a motion for summary judgment, the court must construe the evidence and any reasonable inferences drawn therefrom in

favor of the non-moving party. *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir. 1987); *Baker v. Lukens Steel Co.,* 793 F.2d 509, 511 (3d Cir.1986).

consistent with New York law. In *Wagman v. American Fid. & Cas. Co.*, 304 N.Y. 490, 109 N.E.2d 592 (1952), in an instance where the insured was in the business of delivering goods with its covered vehicle, the court held that with regard to an automobile the term "use" includes "loading and unloading" and "loading and unloading" should be given:

> The broader construction ... that "loading and unloading" [includes] not only the immediate transference of the good to or from the vehicle, but the "complete operation" of transporting the goods between the vehicle and the place from or to which the are being delivered.

*Wagman*, 304 N.Y. at 494, 109 N.E.2d 592. The events giving rise to Wiggins' claim injuries occurred while the bed frame was being delivered to its purchaser. Therefore, Wiggins' claims fall within the scope of the Generali policy's coverage.[6] *Id.; see also General Accident Ins. Co. v. United States Fid. & Gar. Ins. Co.*, 193 A.D.2d 135, 602 N.Y.S.2d 948 (1993).[7] Generali's alternative argument that its policy's mechanical device exclusion precludes coverage is also flawed. Even if a freight elevator is classified as a "mechanical device," the exclusion is not operable because the elevator was stationary when the accident occurred—that is, the claimed injuries did not result from the movement of the bed frame by the elevator.[8] *Seaboard*, 64 N.Y.2d at 311, 486 N.Y.S.2d 873, 476 N.E.2d 272.

PSM argues that the broad reading of the phrases "use of a covered auto" and "loading and unloading" discussed in the above finding of coverage under the Generali's truckers policy precludes coverage under PSM's general liability policy. This argument is faulty in that it employs a broad definition to the interpretation of an exclusion.[9] *Seaboard*, 64 N.Y.2d at 311, 486 N.Y.S.2d 873, 476 N.E.2d 272. The exclusion at issue precludes coverage for the "handling of property ... while it is being moved from an ... auto to the place where it is finally delivered." (Pl.Ex. A. (Commercial General Liability Coverage Form at 8)). It is not clear whether this exclusion concerns the moving of the bed frame to the Building or to its final position within the purchaser's apartment, or somewhere in between. Therefore, employing the narrow construction (i.e. considering arrival at Building as the place where the bed frame is finally delivered) is appropriate. Because the alleged injuries occurred after the bed frame was moved into the Building, PSM's policy provides coverage. *General Accident*, 193 A.D.2d 135, 602 N.Y.S.2d 948 (1993); *Muller v. Sun Indem. Co. of N.Y.*, 276 A.D. 1028, 96 N.Y.S.2d 140 (1950).

Generali and PSM are co-insurers. *Id.*

---

6. The court notes that Exclusion 7, Handling of Property, in the Generali policy states:

   "Bodily injury" or "property damage" resulting from the handling of property:
   a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto": or
   b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

   Pl.'s Mot.Ex. B (Generali Policy at 4). This exclusion clearly implies that coverage extends to the handling of property until it is delivered to its final destination.

7. *General Accident* is practically on all fours with the instant action. In *General Accident*, the underlying plaintiff was injured when a water softener tank fell off a push cart operated by the insured's employee. The accident occurred after the water softener tanks had been removed from the insured's vehicle, placed upon the push cart and transported to the boiler room of the premises of the insured's customer. On these facts, the Court held that both the insured's general liability policy and its automobile policy provided cov-

erage for the accident. The Court rejected the general liability insurer's claim that the accident resulted from the "use" (i.e. "loading and unloading") of the insured's vehicle. Similarly, the court rejected the automobile insurer's claim that use of the push cart constituted unloading by a use of a mechanical device other than a hand-truck. *General Accident*, 602 N.Y.S.2d at 950–952.

8. Generali and PSM agree that the elevator is a mechanical device. Generali Pretrial Mem. at 4.

9. While the parties do not address the issue, the court notes that an Endorsement to PSM's general liability policy (document titled New York Changes–Amendatory Endorsement, CG 01 63 04 86) provides that:

   3. Any definition of "loading and unloading" does not apply.

   (Pl.Ex. A). If this endorsement is applicable, as it appears on its face to be, then the claimed injuries clearly fall within the coverage of PSM's policy. *Muller v. Sun Ind. Co. of New York*, 276 A.D. 1028, 96 N.Y.S.2d 140 (1950).

1542

### JUDGMENT

**AND NOW,** this 9th day of May, 1995, it is hereby **ORDERED** that **JUDGMENT** is entered in favor of Assicurazioni Generali, S.p.A, and against Public Service Mutual Insurance Company in accordance with the court's Order of even date.

