■ RICHARD D. NORTHRUP et al., Appellants, v BLUE CROSS AND BLUE SHIELD OF UTICA-WATERTOWN, INC., Respondent. [652 NYS2d 902] —Mercure, J. P. Appeal from an order of the Supreme Court (Mugglin, J.), entered May 21, 1996 in Delaware County, which, inter alia, granted defendant's cross motion for summary judgment dismissing the complaint.

Plaintiffs brought this action against defendant, their health care insurer, to obtain reimbursement under the policy's major medical insurance coverage for the cost of a Gamete Interfallopian Transfer (hereinafter GIFT) procedure that was performed on plaintiff Dawn F. Northrup. Defendant denied coverage and defended the action on the basis of a policy exclusion for "services in connection with artificial insemination". Following joinder of issue, plaintiffs moved and defendant cross-moved for summary judgment. Concluding that the GIFT procedure fell within the policy exclusion, Supreme Court denied the motion, granted the cross motion and dismissed the complaint, prompting this appeal by plaintiffs. In view of an insurer's burden of "establishing that the exclusions or exemptions apply in the particular case * * * and that they are subject to no

other reasonable interpretation" (*Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311 [citations omitted]), we reach a contrary conclusion. We shall accordingly reverse Supreme Court's order and grant summary judgment in favor of plaintiffs.

Plaintiffs supported their motion with an affidavit of Bradley Van Voorhis, a physician specializing in the fields of reproductive endocrinology and obstetrics and gynecology, expressing the opinion that GIFT and artificial insemination are distinguishable medical procedures. Van Voorhis states:

"In the case of artificial insemination, sample semen is cleansed and then injected into the woman's vagina or uterus. Artificial insemination, which has been in existence since the 1940's, does not entail any surgery and is non-invasive. Occasionally, the woman is stimulated by the use of drugs for the purpose of inducing ovulation * * *

"In contradistinction, GIFT, a form of in vitro fertilization is an advanced reproductive technology, which has been an accepted medical practice since 1984. GIFT utilizes drug monitoring, laboratory testing and a surgical procedure. The surgical procedure is laparoscopy wherein the sperm and the eggs are inserted surgically by incision with a laparoscope into the fallopian tube through the abdomen."

Defendant opposed the motion with an affidavit of a senior vice-president in its Integrated Delivery Systems, a board-certified pediatrician, who construes the policy term "artificial insemination" far more expansively. She states: "Artificial insemination involves the collection of semen from the male, and then the insertion of semen into the woman's vagina or uterus or oviduct by other than natural means, such as a catheter, in order to increase the likelihood that a sperm will fertilize the woman's egg cell and result in pregnancy. * * * Similarly, the [GIFT] procedure involves collection of semen from the male and the collection of eggs (oocytes) from the female ovary. Hormonal manipulation to enhance egg production is also required. The sperm is then mixed with the woman's egg (or eggs) outside of the body and then both the sperm and the egg(s) are inserted into the woman's Fallopian Tube using a catheter. This procedure increases the likelihood that a sperm will fertilize the woman's egg cell and result in pregnancy. * * * Although the GIFT procedure involves the extra step of physically removing the woman's egg cell and mixing it with the sperm outside of the body, the GIFT procedure is a form of Artificial Insemination, as the sperm and egg are inserted into the Fallopian Tubes using artificial means."

The similarity between artificial insemination and GIFT are

apparent. Both involve the introduction of semen into a woman's body and the two are clearly directed toward the same end—conception and the ensuing birth of a child. Nonetheless, defendant's onerous burden is not satisfied by a showing of mere similarity or that the spirit of the policy language is furthered by the inclusion of the GIFT procedure within the term "artificial insemination". To the contrary, "exclusions or exceptions from policy coverage must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction" (id., at 311; see, Boggs v Commercial Mut. Ins. Co., 220 AD2d 973). The distinctions between the two procedures are patent. Artificial insemination requires no surgical intervention and involves neither the collection of oocytes, their direct admixture with sperm or their introduction into an oviduct. Had it been defendant's intention to unequivocally exclude the GIFT procedure from the policy's coverage, it could easily have done so by utilizing the language "services related to conception by artificial means, including in vitro fertilization or artificial insemination", as it did in the year following the effective period of plaintiffs' policy. Under the circumstances, we conclude that Supreme Court should have granted plaintiffs' motion and denied defendant's cross motion.

Defendant's additional contentions have not been preserved for our consideration.

White, Casey, Peters and Carpinello, JJ., concur. Ordered that the order is reversed, on the law, with costs, cross motion denied, motion granted and plaintiffs are awarded judgment in the amount of $5,700 together with interest from September 1, 1991.