Cratsley, J.
In the present stage of this insurance coverage action,[3] the only issue tried before this Court was to determine whether the plaintiff, Eastern Enterprises [“Eastern”],[4] met its burden of proof to show the existence and material terms of the disputed “lost policies” issued by Massachusetts Bonding and Insurance Company [“Mass. Bonding”] and Hanover Insurance Company [“Hanover”].[5]
The parties have stipulated that Mass. Bonding issued to Eastern two successive Comprehensive General Liability [“CGL”] policies bearing the policy number CGL 33816 from 3/1/56 to 3/1/59 and from 3/1/59 to 3/1 /62 and that Hanover likewise issued a *252 CGL 60203 policy to Eastern from 3/1 /62 to 3/1 /66.[6] The dispute between the parties arose out of a Notice of Responsibility [“NOR”] issued by the Massachusetts Department of Environmental Protection [“DEP”] to Eastern on-October 18, 1984 pursuant to M.G.L.c. 2IE.[7] The NOR asserts that a release of hazardous materials has resulted from the operation of Eastern’s former coal tar processing facility [“CTPF”] located in Everett, Massachusetts.[8] Eastern claims that defendants Hanover and Aetna have breached their respective contractual obligations by refusing to provide Eastern with a defense in response to the NOR. Hanover denies that the CTPF is a named insured on its policy and so denies any coverage of the claim and any duty to defend Eastern in this action.[9]
The parties have also stipulated that each has conducted a diligent search for the policies and that neither could locate any originals or copies.[10] A jury waived trial on this narrow lost policies issue was held from June 5-7, 1995. This Court sets forth herein the necessary Findings of Fact and Conclusions of Law to resolve the legal issue raised at trial. Issues regarding the applicability of the policies to the specific DEP claim will be the subject of future litigation and are not covered in this decision.[11]
Findings of Fact
1. Eastern is both an operating and a holding company.[12]
2. On. March 31, 1936 Eastern acquired a fee interest in property located in Everett, MA. This site included the existing CTPF plant and equipment which Eastern leased to Koppers Company, Inc. [“Koppers”] from January 1, 1937 until September 30, 1960, when the lease expired and operations ceased.[13]
3. The lease between Eastern and Koppers contained two indemnification agreements “in the event of any proceeding or suit at law . . . instituted by a governmental authority against Eastern based on alleged pollution . . .”[14]
4.' In addition to the CTPF Eastern owned and operated a coke plant and a blast furnace also located in Everett, MA. These plants, together with the CTPF, comprised Eastern’s “Operating Division.” Eastern’s “General Division” is Eastern’s administrative headquarters and offices located in Boston, MA.[15]
5. Following the closing of the CTPF Eastern arranged for its dismantling which commenced in 1960 and was substantially completed by 1964.
6. In 1961 Eastern began to convey its interests in the Everett property to various entities until its final conveyance in 1972.
7. This Court finds by clear and convincing evidence[16] that the disputed lost CGL polices track the material terms and conditions of the Standard National Bureau of Casualty Underwriters [“the Bureau”] CGL form in industry-wide use during the relevant policy periods.[17]
8. This Court finds by clear and convincing evidence that Mass. Bonding issued two three-year CGL policies to Eastern from 3/1/56 to 3/1/59 and from 3/1/59 to 3/1/62, bearing the policy number 33816;[18] that Hanover issued one CGL policy to Eastern from 3/1/62 to 3/1/66 bearing the policy number 60203; and that all Mass. Bonding and Hanover lost policies provided coverage for the “premises and operations” of Eastern’s Operating Division, General Division and several of Eastern’s Massachusetts subsidiaries.[19] The Mass Bonding policies had a limit of liability for property damage of $50,000 per “accident” or “occurrence” and the Hanover policy had a policy limit of $50,000 per “occurrence.”[20] None of the policies contained an aggregate limit for property damage, a pollution exclusion clause, or an owned property exclusion clause.[21]
9. This Court finds by clear and convincing evidence that “umbrella” insurance was issued to Eastern effective June 1, 1961 to afford Eastern excess liability insurance on various policies.[22]
Discussion
The two legal issues disputed by the parties are the appropriate standard of proof and the scope of proof required for Eastern to establish the existence and material terms of the lost policies. Significantly, the parties do not dispute that Mass. Bonding and Hanover issued to Eastern their respective CGL policies from the period 3/59 — 3/66.[23]
With regard to the appropriate standard of proof required for Eastern to establish the existence of the policies, Hanover contends that Eastern must meet a clear and convincing burden of proof, while Eastern advocates a lighter preponderance of the evidence standard. While this issue has not yet been decided by the Supreme Judicial Court, this Court is guided by many other jurisdictions which have held that “the proponent of a lost instrument must prove its existence, loss and contents by clear and convincing or strong and conclusive evidence.” Ostrager and T. Newman. Handbook on Insurance Coverage Disputes 421 (1989).[24] See also, Sylvania Electric Products, Inc. v. Flannigan, 352 F.2d 1005, 1008 (1st Cir. 1965); Emons Industries v. Liberty Mut. Fire Ins. Co. 545 F.Supp. 185 (S.D.N.Y. 1982); Boyce Thompson Institute v. Insurance Company of North America, 751 F.Supp. 1137 (S.D.N.Y. 1990); Keene Corp. v. Insurance Company of North America, No.78-1011,1981 Fire & Casually Cas. (CCH) 712 (D.D.C. Jan. 30, 1981); for Mass. trial court decisions, see SCA Disposal Services of New England, Inc. v. Central National Insurance Company of Omaha, Suffolk County Superior Court, C.A. No. 900393-C, Memorandum and Order on Cross Motions for Summary Judgment, 2 Mass. L. Rptr. 49 (April 12, 1994) (Cratsley, J.); Rubenstein v. Liberty Mutual Insurance Co., Suffolk County Superior Court, C.A. No. 901687-B, Memorandum and Order On Lost Policy Claim Concerning Royal Insurance Company, (May 19, 1994) (Botsford, J.)
*253 With regard to the scope of proof necessary for Eastern to make a showing of the lost policies, as the policies at issue cannot be verified directly, the party seeking to prove the contents of the original documents may offer any type of secondary evidence to establish the existence and material terms of the polices. See Polaroid Corp. v. Rollins Env. Services, 416 Mass. 684 (1990); Burroughs Wellcome Co. v Commercial Union Ins. Co. 632 F.Supp. 1213 (S.D.N.Y. 1986), citing, Weinstein’s Evidence, 11004(01] at 1004-4; Emons, supra. Once the insured establishes basic coverage, the burden then shifts to the insurer to prove any exclusions or limitations to that coverage. State Mut Life Assur. Co. v. Lumbermens Mut. Cas. Co., 874 F.Supp. 451 (D.Mass. 1995); see also Emons, supra at 189.
As this Court’s Findings of Fact indicate, Eastern has met its burden, through both expert testimony and documentary proof, to show the existence and material terms of the Mass. Bonding and Hanover CGL policies affording coverage to the CTPF. Eastern has put forth clear and convincing evidence that Hanover and Mass. Bonding issued respective CGL policies to Eastern during the relevant policy periods; that said policies covered all insurable interests, including ownership interests, of the named insured unless otherwise excluded; that EGFA’s Operating Division was a named insured on said policies; and that the premises and operations of the Everett CTPF were premises and operations covered by said policies.
Hanover, by contrast, has not met its burden to prove any exclusions with regard to Eastern’s CGL coverage.[25] Ultimately, Hanover has offered no tangible evidence persuasive to this Court to support its contention that changes in circumstances regarding the ownership and operation of the CTPF would have necessarily impacted Eastern’s CGL coverage.
Order
For the foregoing reasons, judgment is to enter in favor of the plaintiffs declaring that Mass. Bonding and Hanover insurance companies provided CGL insurance coverage for property damage liability to Eastern’s CTPF from 3/1/56 to 3/1 /66 and that said coverage contained the same material terms and conditions as the 1943 standard CGL Bureau form during the relevant policy periods.

On April 7, 1995, this Court (Neel, J.) issued an Order providing, inter alia, that “there shall be a jury trial ... on the issue of whether there was an insurance contract between plaintiff and defendant Hanover, and on the terms and conditions of any such contract.” The parties waived a jury trial and proceeded before this Court in June of 1995.

Eastern Enterprises was formerly known as Eastern Gas and Fuel Associates [“EGFA”] until it changed its name on April 28, 1989.

Hanover acquired Mass. Bonding on July 1, 1961.

See Exhibit 1: Statement of Agreed Facts.

See Exhibit 4: A second NOR was issued on March 22, 1985 acknowledging the shared responsibility of Koppers Co. as the operator of the coal tar processing facility from 1936 to 1960.

Eastern acquired title to the plant in 1936. The plant was constructed some time at the turn of the century and operated by other companies prior to Eastern (see Exhibit 3).

Defendant Aetna also denies any duty to defend or indemnify Eastern, but has not raised a lost policies issue. This Court (Lopez, J.) granted Eastern partial summary judgment that Aetna’s two CGL policies issued to Eastern effective from 3/1/69 to 3/1/70 and from 3/1/70 to 3/1/71 obligate Aetna to defend Eastern in connection with the 3/22/85 NOR. See Memorandum of Decision and Order on Plaintiffs Motion for Partial Summary Judgment, dated June 3, 1994 [2 Mass. L. Rptr. No. 11, 234 (July 18, 1994)].

See Exhibit 27.

This Court acknowledges that the duty to defend is broader than the duty to indemnify; any findings by this Court regarding Hanover’s defense obligations are independent of any indemnify obligations which may or may not be imposed in any future phase of this action. Trustees of Tufts University v. Commercial Union Ins. Co., 415 Mass. 844, 854 n. 10 (1993).

See Exhibit 28: Eastern Annual Reports.

See Exhibit 32: Statement of Agreed Facts. Plaintiffs expert, Mr. Silver, testified that upon acquiring title, Eastern gained an insurable liability interest in the CTPF and retained that interest until the completed conveyance of the property in 1972. Mr. Silver also testified that a CGL policy will provide coverage for all insurable interests of the named party (e.g an ownership interest as a landlord) unless otherwise excluded.

See Exhibit 14: Lease Agreement between Koppers Company, Inc. and Mass. Gas Companies.

See Exhibit 28: Eastern’s Annual Reports dating from 1954 to 1958 list the blast furnace and coke plant as comprising Eastern’s Operating Division. The CTPF is not listed in these Annual Reports as it was never operated by Eastern at any time during Eastern’s holding of title. The blast furnace and coke plant were not listed in the Reports beyond 1958 and ceased operations in April 1960. Eastern’s General Division, which exists to date, has not been listed in Eastern’s Annual Reports since 1961. This Court notes that defendant Aetna’s policies, which were issued to Eastern from 1966 onward (i.e. long after the Operating Division plants ceased their operations), list Eastern’s Operating and General Divisions among the several named insureds (see Exhibit 16, 1966 Aetna policy). Hanover’s contention that the Aetna policy would have reflected those plants no longer “in operation” is thus unsupported. Hanover does not argue that Eastern’s Operating Division excluded the CTPF; rather, that changes in operating conditions would have mandated a change in CGL coverage. Hanover did not, however, put forth any evidence to prove that such circumstances would have changed the underwriting circumstances (i.e. that would have resulted in an exclusion of the CTPF). Moreover, a memorandum from G. Trump of Eastern’s Insurance Department, dated June 3, 1960, indicates that Eastern was indeed aware of its insurable interest in the CTPF well after the plant had closed and was intent on retaining insurance coverage “to protect Eastern Gas against our liability, if any, in connection with the various types of property being sold from the Everett Plant” (see Exhibit 6).

See Discussion section. While the Supreme Judicial Court and Mass. Appeals Court have yet to address the standard of proof required of a plaintiff to prove the issuance and contents of a lost insurance policy, this Court has held that a plaintiff “must prove the existence, execution, delivery, and contents of the policy by clear and convincing evidence.” SCADisposalServices of New England, Inc. v. Central National Insurance Company of Omaha, Suffolk County Superior Court, C.A. No. 900393-C, Memorandum and Order on Cross Motions for Summary Judgment, 2 Mass. L. Rftr. 49 (April 12, 1994) (Cratsley, J.) at 20, citing Sylvania Electric Products, Inc., v. Flannigan, 352 F.2d 1005, 1008 (1st Cir. 1965); see also Rubenstein v. Liberty Mutual Insurance Co., Suffolk County Superior Court, C.A. No. 90-1687-B, Memorandum and Order On Lost Policy Claim Concerning Royal Insurance Company, (May 19, 1994) (Botsford, J.)

See Exhibit 26. The parties have stipulated that both Mass. Bonding and Hanover were members of the National Bureau of Casualty Underwriters. Members of the Bureau were required to employ the standard Bureau form during the relevant policy periods. While Hanover argues that the issuance of a “manuscript” policy might have altered the standard terms to reflect special circumstances unique to the insured, it has put forth no evidence in support of that proposition. At best, Hanover points to an introductory memo from Eastern’s Insurance and Claim Department which states that “many times the provisions of the Standard Insurance Policy are not broad enough to protect the properties against some losses that might occur. In such cases, it is necessary to have special endorsements and provisions inserted in, or attached to, the Standard Policy ... because of the widespread locations of the properties . . . because of changes ... in operating conditions of the property ...” (Exhibit 5.) While such language supports Hanover’s position in the abstract, the onus remains with Hanover to provide proof of any such endorsements, as they are tantamount to exclusions. Negative inferences cannot be drawn from the'indemnification lease between Eastern and Koppers, from the absence of claims regarding the CTPF on Hanover’s “loss run” sheets, or from the shut-down of the CTPF in 1960; any alterations in CGL coverage (e.g. any exclusion of certain locations) must be affirmatively proven by Hanover (see Discussion section for the legal standard as regards the parties’ respective burdens of proof in lost policies cases). In a similar vein, while a particular manuscript policy may well incorporate terms and conditions which depart from the standard terms and conditions, again the burden rests with Hanover to prove such a departure. As Mr. Silver testified, the 1966 Aetna CGL policy is a manuscript form which virtually mirrors the 1943 Bureau form. Furthermore, Mr. Hilchi, who worked in Eastern’s insurance department from 1954 to 1987 and negotiated the Hanover policy which followed the Mass. Bonding policy, testified that the Mass. Bonding policy was a manuscript policy which mirrored the standard Bureau form as well. Indeed, “the use of standardized wording in insurance agreements is a basic component of insurance industry practice.” Safeco Insurance Company of America v. Great American Insurance Company, No. 87-664-JU (U.S.D.C. D.Or), Order, Findings and Recommendation (Jan. 16,1990) (Juba, M.J.) (citation omitted). While “the use of a standard form in one policy is not itself proof that it was included in a different policy,” Hanover has provided no evidence to counter the testimony of Eastern’s credible witnesses. See SCA Disposal Services supra at 21 (citations omitted).

Based on Mr. Silver’s testimony, the same policy number indicates that the same CGL policy was extended into a second three-year term. “When the type of policy is known, it may be possible to establish the terms and conditions of the policy by reference to a standard form.” B. Ostrager and T. Newman. Handbook on Insurance Coverage Disputes 424 (1989).

See Exhibit 16: 1966 Aetna CGL policy. This Court credits the testimony of Mr. Grant, the broker who arranged for the first Aetna policy, that the intent of the Aetna policy was to carry over all terms of the Hanover policy so as to duplicate or broaden the coverage provided by that policy. In addition, Mr. Silver testified that the 1943 standard Bureau form and the 1966 Aetna policy are essentially the same, save the revision in language from “accident” to “occurrence” coverage first introduced in the early ‘60s and then incorporated into the standard printed form in 1966. The Aetna policy indicates Eastern (i.e. EGFA) as a named insured on the declarations page with reference to “see endorsement.” The endorsement page indicates the insured as “EGFA, solely with respect to operations of its divisions and subsidiaries named . . . Operating Division . . . ; General Division . . .” It is Hanover’s contention that a CGL policy provides coverage for separate hazards for which a separate premium is paid and that Eastern must therefore prove the schedule of hazards as inclusive of the CTPF location. However, since the hazards schedule of the Aetna policy reads “all premises and operations,” this Court deems the burden to be on Hanover to prove that the CTPF was excluded from this schedule. Moreover, Hanover’s alternative argument that even if the “operations” of the CTPF were included in the coverage, the “premises” (i.e. ownership interests) were not covered, is wholly unpersuasive. As there were never — at any time — "operations" of Eastern’s General Division, and the “operations” of the CTPF, blast furnace, and coke plant had all ceased by 1960, it would have defied logic for Eastern to have taken out Aetna insurance for the “operations” of its divisions and not their “premises.” The property (i.e. premises) damage claims on Hanover’s 1962-1966 loss run sheets (Exhibit 10) also lends support to the conclusion that Eastern’s premises were in fact covered by its CGL insurance.

Prior to 1966, the standard Bureau form CGL policy in industry-wide use provided for coverage on an “accident” basis. Since 1966, the standard form has provided for coverage on an “occurrence” basis. This revision in language reflects a broadening of coverage from the accident basis to include “a continuous or repeated exposure to conditions,” yet retains the requisite “fortuitousness” of loss for coverage. See B. Ostrager and T. Newman. Handbook on Insurance Coverage Disputes 168 (1989). Whether the DEP claim qualifies as either an “accident” or an “occurrence” is not for this Court to decide.

These issues were acknowledged by the parties at trial.

See Exhibit 7. Hanover’s contention that Eastern’s purchase of umbrella insurance is evidence that Eastern had no primary coverage for the CTPF does not comport with industry practice. Rather, as Mr. Silver testified, umbrella policies generally cover the same entities as primary coverage; that is, umbrella insurance policies require the insured to first maintain specified levels of underlying insurance and become relevant only after a predetermined amount of primary coverage has been exhausted. See Handbook on Insurance Coverage Disputes supra at 152, 319; see also Safeco supra at 3.

Hanover has never disputed that the type of liability policy issued to Eastern was a “comprehensive liability policy” and not a “schedule liability” policy. Likewise, Hanover did not dispute Mr. Silver’s characterization of the former as providing coverage for “everything not excluded” and the latter as providing coverage for what is “specified only.”

A clear and convincing burden is met when “evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist.” Callahan v. Westinghouse Co., Inc., 372 Mass. 582, 588 (1977) (citation omitted).

For a fuller discussion of Hanover’s failure to meet its burden of proof regarding coverage exclusions, see notes 15, 17, 19 and 22, supra.